## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TOTAL SAFETY U.S., INC.** | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO.**_____ |
| **versus** | § | |
| | § | **JUDGE** _____ |
| **GARY ROWLAND** | § | |
| **Defendant.** | § | **SECTION** _____ |
| | § | |

_____

## VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
_____

Plaintiff Total Safety U.S., Inc. ("Total Safety") respectfully files this Verified Complaint for Damages and Injunctive Relief against Defendant Gary Rowland and avers as follows:

### PARTIES

1.

Total Safety is incorporated under Delaware law and maintains its principal place of business in Houston, Texas.

2.

Defendant Gary Rowland ("Rowland") is a domiciliary of Louisiana, living in or near Ascension parish.  Rowland served as a Regional Manager for Total Safety until he resigned from that position on October 6, 2013.

## JURISDICTION AND VENUE

3.

Jurisdiction is proper under 28 U.S.C. § 1332 because Total Safety and Rowland are diverse and the amount in controversy exceeds $75,000.00.

4.

Venue is proper under 28 U.S.C. § 1391 because many of the actions giving rise to Total Safety's breach of contract claim have occurred or will occur in parishes within this district, such as St. Charles Parish, Assumption Parish, and Lafourche Parish.

## FACTS

5.

Total Safety is a global provider of integrated industrial safety solutions, including personnel and equipment, through a portfolio of safety services, including, without limitation, breathing air and respiratory protection, gas detection, fire protection and engineered fixed life/fire/safety systems, personnel, safety consulting and training, communications equipment, medical services and industrial hygiene necessary to keep workers, facilities, and the environment safe.

6.

On or around November 15, 2005, Total Safety and Rowland entered into the Employment Agreement, a true and correct copy of which is attached as Exhibit 1. Through that agreement, Rowland and Total Safety agreed that Rowland would serve as Total Safety's Regional Manager for Region 4—a territory that includes all the territory

between Lafayette, Louisiana and Pensacola, Florida, bounded on the north by Shreveport, Louisiana and the south by the Gulf of Mexico, and including Total Safety's offices in the Louisiana cities of Gonzalez, Baton Rouge, and New Orleans and the Alabama cities of Mobile and Decatur—for a specified term.   The term of the Employment Agreement was as follows:

> [t]he Company shall employ Employee, and Employee hereby accepts employment with the company, upon the terms and conditions set forth in this Agreement for the period beginning on the Effective Date (as defined below) and subject to earlier termination as provided in Section 6 hereof, ending two (2) years thereafter (the "Initial Term").  At the expiration of the Initial Term, this Agreement shall automatically renew for successive additional terms of (1) year (each a "Renewal Term" and, together with the Initial Term, the "Employment Period"), unless notice of termination is given in writing by either party hereto to the other party at least sixty (60) days prior to the expiration of the Initial Term or any successive Renewal Term.

(Ex. 1, ¶ 2.)

7.

The Employment Agreement sets forth both Total Safety's and Rowland's respective obligations relating to Rowland's employment relationship with Total Safety. It sets forth Rowland's duties as a Regional Manager, as well as the benefits and compensation that Total Safety was obligated to provide him for his services.

8.

The Employment Agreement also includes restrictive covenants concerning competition and solicitation activities that Rowland agreed to refrain from within specified parishes and certain municipalities for a period of 12 months after his

employment with Total Safety ended.   The Employment Agreement defined the geographical areas as the Designated Parishes and Cities and the Louisiana Outer Continental Shelf ("OCS") Designated Territory contiguous to named Parishes.

9.

Specifically, Paragraph 10(a) of the Employment Agreement provides the following:

> Employee acknowledges that in the course of his employment with the Company and its Subsidiaries he shall become familiar with the Company's and its Subsidiaries' trade secrets and with other confidential information concerning the Company and its Subsidiaries and that his services have been and shall be of special, unique and extraordinary value to the Company and its Subsidiaries. In further consideration for the promises of Company contained herein and the compensation to be paid to Employee hereunder, including, but not limited to, the specific compensation set forth in Section 6(c), Employee agrees that during his/her employment with Company and for a period of twelve (12) months from the date that he/she ceases to be employed by Company (herein collectively referred to as the "Noncompete Period"), for whatever reason or cause, that he/she shall not permit the use or association of his/her name or identity, or render any service, assistance, advice or consultation to, directly or indirectly, whether as a principal, agent, employee, contractor, consultant, volunteer, financier or otherwise, or own, manage, operate, control, participate in or have any financial interest in, directly or indirectly, as a shareholder, partner, proprietor or otherwise, any corporation, partnership, limited liability company, sole proprietorship, or any other entity engaged in the Company's Business within the geographical limits of the Parishes of **Ascension, Assumption, East Feliciana, Iberia, Iberville, Jefferson, Lafayette, Lafourche, Orleans, Plaquemines, Pointe Coupee, St. Bernard, St. Charles, St. Landry, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Washington, West Baton Rouge, and West Feliciana, State of Louisiana, a fifty (50) mile radius in and around Decatur, Alabama, Chicago, Cook County, IL, including a fifty (50) mile radius in and around Dolton, IL, and Philadelphia, PA, including a fifty (50) mile radius in and around Essington, PA,** (hereinafter referred to as the "Designated Parishes and Cities") as long as Company carries on a like

business in the respective Designated Parish and Cities. Employee further agrees that during the Noncompete Period, for whatever reason or cause, that he/she shall not permit the use or association of his/her name or identity, or render any service, assistance, advice or consultation to, directly or indirectly, whether as a principal, agent, employee, contractor, consultant, volunteer, financier or otherwise, or own, manage, operate, control, participate in or have any financial interest in, directly or indirectly, as a shareholder, partner, proprietor or otherwise, any corporation, partnership, limited liability company, sole proprietorship, or any other entity engaged in the Company's Business (as herein defined) within the geographical limits of the **Outer Continental Shelf located off of the following coastal Parishes in the State of Louisiana: Parishes of Cameron, Iberia, Jefferson, Lafourche, Orleans, Plaquemines, St. Bernard, St. Mary, Terrebonne, and Vermilion, State of Louisiana** (hereinafter referred to as the "Louisiana OCS Designated Territory") as long as Company carries on a like business in the respective Louisiana OCS Designated Territory. Notwithstanding anything contained to the contrary, Employee may render such services to Company or its affiliates during said time period. Further, except on behalf of the Company, Employee agrees that during the Noncompete Period, for whatever reason or cause, that he/she will not call upon or solicit (either on his own behalf or on behalf of another) within the geographical limits of the Designated Parishes and Cities and the Louisiana OCS Designated Territory any customer or client who is or was serviced in whole or in part by the Company with the intent of selling or attempting to sell or providing to any such customer any services similar to the services provided by the Company as described in Paragraph 1 hereof referred to as Company's Business. Furthermore, Employee agrees that during the Noncompete Period, for whatever reason or cause, that he shall not request or advise any client, customer or contractor of Company to withdraw, curtail, reduce or cancel its business with Company within the geographical limits of the Designated Parishes and Cities and the Louisiana OCS Designated Territory (including, without limitation, making any negative or disparaging statements or communications regarding the Company, any of its Subsidiaries or any of their operations, officers, directors or investors).

(Ex. 1, ¶ 10(a)) (emphasis in original).

10.

Paragraph 10(b) of the Employment Agreement provides further:

During the Noncompete Period, Employee shall not directly or indirectly in any manner (whether as an owner, officer, director, partner, employee, contractor, consultant or otherwise) (i) solicit or induce or attempt to solicit or induce any employee of, or consultant to, the Company, or any of its Subsidiaries to leave the employ of the Company, or any such Subsidiary, or in any way interfere with the relationship between the Company, or any of its Subsidiaries and any their employees or consultants, or (ii) hire any person who was an employee of or consultant to the Company or any of its Subsidiaries (provided, however that Employee may hire former employees and consultants to the Company and Subsidiaries after such former employees or consultants have ceased to be employed or otherwise engaged by the Company or any of its Subsidiaries for a period of at least twelve (12) months).

(Ex. ¶ 10(b)).

11.

Rowland also acknowledged that the restrictive covenants in Paragraph 10 were

reasonable:

Employee acknowledges that the restrictions contained in this Section 10 with respect to time, geographical area, and scope of activity are reasonable and do not impose a greater restraint than is necessary to protect the goodwill and other business interests of the Company and that he has had the opportunity to review the provisions of this Agreement with his legal counsel. In particular, the Employee agrees and acknowledges that the Company is currently engaging in business and actively marketing its services and products throughout the Designated Parishes and Cities and the Louisiana OCS Designated Territory, the Company expends significant time and effort developing and protecting the confidentiality of its methods of doing business, customer lists and trade secrets and such methods, customer lists and trade secrets have significant value. However, if, at the time of enforcement of this Section 10, a court shall hold that the duration, geographical area or scope of activity restrictions stated herein are unreasonable under circumstances then existing or impose a greater restraint than is necessary to protect the goodwill and other business interests of the Company, the parties agree that the maximum duration, scope or area reasonable under such circumstances shall be substituted for the stated duration, scope or area and that the court shall be allowed to revise the restrictions contained herein to cover the maximum period, scope and area permitted by law.

(Ex. 1, ¶ 10(c)).

12.

Rowland and Total Safety also defined the scope of Total Safety's business for the purposes of Paragraph 10's non-competition and non-solicitation provisions. Specifically, the Employment Agreement defines "Company's Business" as:

> the business (whether conducted or to be conducted in the future) of providing safety services and products, including, but not limited to, the rental and sale of safety gear and toxic gas detection equipment, fire suppression services, the design, installation, and repair of gas detection equipment, and the training, consulting, and inspection of general and fire safety procedures, and any other different type of business conducted by the Company or any of its Subsidiaries in the future to which the Employee becomes exposed to or involved with the business operations thereof.

(Ex. 1, ¶ 1 "Company's Business".)

13.

Rowland also acknowledged that these restrictive covenants were necessary for Total Safety to protect its goodwill, confidential information, and trade secrets and that Total Safety was giving him access to its confidential information and trade secrets in exchange for his promise to refrain from the activities listed in Paragraph 10 of the Employment Agreement for the specified period of time within the designated parishes, municipalities, and territories. *See* (Ex. 1, ¶10(a).)

14.

Indeed, after entering the Employment Agreement with Total Safety, Rowland acquired a keen understanding and extensive access to Total Safety's confidential information and trade secrets, especially with respect to its business interests and client

relationships within Region 4 and the parishes, municipalities, and territories designated in Paragraph 10 of the Employment Agreement.  The relationships that Rowland has helped build with Total Safety's customers accounted for approximately $27 million in revenue for 2012 (and similar numbers in prior years) for Total Safety.

15.

Rowland, nevertheless, agreed that he "shall use the Confidential Information only as necessary and only in connection with the performance of his duties" as a Regional Manager for Total Safety and that he "shall not disclose to any unauthorized person or use for his own purpose or any other purpose . . . any Confidential Information without the prior written consent of the Board."  *See* (Ex. 1, ¶ 7.)

16.

On Saturday, October 6, 2013, Rowland sent a letter to Total Safety's Dave Mylenski and the "HR/Executive Management" to inform them that he was resigning from his position as Regional Manager for Region 4 and from his employment with Total Safety.  He stated in the letter that his resignation was effective immediately on October 6, 2013.

17.

At the time Rowland sent his resignation letter, the Employment Agreement was still in effect.

18.

On October 8, 2013, Total Safety executives, Jerry Paul Johnson and Troy Thacker, met with Rowland in attempt to understand why he resigned and what his current employment intentions were.  Rowland stated that he had an offer for employment from the company 24Hr-Safety that he accepted.  24Hr-Safety is a direct competitor of Total Safety within the Designated Parishes, Cities, and the designated geographic territory set forth in the Employment Agreement:  it engages in the same business as Total Safety, offering a "variety of safety rentals, services and product sales" that includes gas detection, respiratory equipment, safety training and safety personnel. *See* http://www.24hr-safety.com.

19.

Johnson and Thacker showed Rowland a copy of the Employment Agreement and reminded him of his non-competition obligations after Rowland expressed his intention to work for 24Hr-Safety.  They also offered Rowland a chance to return to Total Safety as the Regional Manager of Region 4.

20.

Rowland asked Johnson and Thacker for 24 hours to think about his options. Johnson and Thacker agreed to wait for Rowland's response.

21.

Total Safety communicated to Rowland on October 9, 2013 that a response was necessary by 6:30 p.m. regarding his intentions with respect to employment or the

company would have no choice other than to seek injunctive relief.  Rowland failed to respond.

22.

Additionally, on information and belief, Rowland has also recruited employees who worked for Total Safety and induced them to resign from their positions and to work for 24Hr-Safety.  Since Rowland sent his resignation letter to Total Safety, Jackie Mixon and Justin Rowland have followed his lead and informed Total Safety that they too were resigning, and Total Safety believes on information and belief that they have resigned to work with Rowland at 24Hr-Safety.

## COUNT ONE
## BREACH OF CONTRACT

23.

Total Safety realleges and incorporates all allegations set forth in the preceding paragraphs.

24.

Rowland agreed to enter into the Employment Agreement with Total Safety on or about November 14, 2005, and both Rowland and Total Safety acknowledged that they received sufficient consideration for agreeing to "the mutual covenants contained" in the Employment Agreement, as well as "other good and valuable consideration."

25.

Rowland also acknowledged in the Employment Agreement that he agreed to be bound by the non-competition and non-solicitation provisions in consideration for access to Total Safety's confidential information and trade secrets, for Total Safety's promises contained in the Employment Agreement, and for the compensation that Total Safety will pay to Rowland.

26.

Rowland agreed to bind himself to the non-competition and non-solicitation obligations in the Employment Agreement.  These obligations require Rowland, for a period of 12 months following his employment's end, to refrain from competing with Total Safety and soliciting Total Safety's customers within the Designated Parishes and Cities, as well as from inducing Total Safety employees to resign from Total Safety and to work for a competitor.

27.

On October 6, 2013, Rowland resigned from Total Safety, and based on his statements, he is currently an employee of 24Hr-Safety—an entity engaged in the business of "providing safety services and products, including, but not limited to, the rental and sale of safety gear and toxic gas detection equipment, fire suppression services, the design, installation, and repair of gas detection equipment, and the training, consulting, and inspection of general and fire safety procedures" within the Designated Parishes and Cities and/or within the Louisiana OCS Designated Territory.

28.

Additionally, on information and belief, Rowland has recruited employees of Total Safety and induced them to resign from Total Safety and to work with him at 24Hr-Safety.

29.

Rowland's employment with 24Hr-Safety is a material breach of the non-competition provisions of Paragraph 10(a) of the Employment Agreement, and his recruiting and inducement of Total Safety's employees is a material breach of the non-solicitation provisions of Paragraph 10(b) of the Employment Agreement.

30.

Rowland also breached the Employment Agreement by failing to give Total Safety the required 60 days' notice before resigning.  Rowland sent his resignation letter on October 6, 2013, which is less than 60 days from November 15, 2013, this term's end-date. *See* (Ex. 1, ¶ 2.)

31.

Consequently, Rowland's material breaches have and will cause Total Safety significant damages, and as Rowland acknowledged, these damages are immediate and irreparable through any monetary remedy, making injunctive relief available. (Ex. 1, ¶ 10(d).)

32.

Rowland and Total Safety specifically agreed that, "[i]n the event of the breach or a threatened breach by Employee of any of the provisions of . . . Section 10, the Company and any of its Subsidiaries, in addition and supplementary to other rights and remedies existing in its favor, shall be entitled to specific performance, temporary restraining order and/or injunctive or other equitable relief from a court of competent jurisdiction in order to enforce or prevent any violations of the provisions hereof (without posting a bond or other security)."

## APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF

33.

Total Safety realleges and incorporates all allegations set forth above.

34.

The Employment Agreement is enforceable and contains enforceable restrictive covenants.

35.

As set forth in Paragraphs 23-32 of this Verified Complaint, Rowland materially breached the Employment Agreement by violating both the non-competition and non-solicitation provisions.

36.

Rowland has acquired extensive knowledge of Total Safety's confidential information and trade secrets as the Regional Manager for Region 4.   Rowland is

working for Total Safety's direct competitor, 24Hr-Safety, within Region 4 and will be able to use that knowledge to compete with Total Safety.  Rowland is also using his relationships with Total Safety's employees to recruit and induce them to resign from Total Safety in order to work for 24Hr-Safety.

37.

Rowland agreed and acknowledged that Total Safety "is currently engaging in business and actively marketing its services and products throughout the Designated Parishes and Cities and the Louisiana OCS Designated Territory" and that Total Safety "expends significant time and effort developing and protecting the confidentiality of its methods of doing business, customer lists and trade secrets and such methods, customer lists and trade secrets have significant value."  (Ex. 1, ¶10(c).)

38.

Rowland's breaches of the Employment Agreement will cause Total Safety an indeterminate amount of lost business and a loss in prospective goodwill, which poses the substantial threat that Total Safety will suffer irreparable harm.

39.

Rowland, moreover, acknowledged in the Employment Agreement that any breach of the non-competition or non-solicitation covenants will cause immediate and irreparable harm to Louisiana such that Total Safety is entitled to injunctive relief to restraining him from engaging in conduct that violates these covenants.

40.

Rowland will also suffer no inconvenience from the issuance of injunctive relief because he will merely be enjoined from engaging in activities—from which he agreed to refrain—within a specific timeframe and defined geographic area.  The issuance of injunctive relief, moreover, will not disserve the public interests.  No entity is restricted from engaging in commerce, and the restrictive covenants do not violate public policy.

41.

Additionally, Rowland waived the need for posting a bond or other security to remedy a breach of a restrictive covenant through injunctive relief.  *See* (Ex. 1, ¶ 10(d).)

## **RELIEF SOUGHT**

Total Safety requests a judgment in its favor, and against Rowland, awarding a temporary restraining order, preliminary and permanent injunctive relief, damages, and all other relief to which Total Safety is entitled in contract, law, and equity, including but not limited to the following relief:

1. That this Court enter a Temporary Restraining Order, *ex parte*, in accordance with the applicable law and procedure, to be effective for fourteen days or until any date properly extended, enjoining and prohibiting Rowland from:

   A. Permitting the use or association of his name or identity to 24Hr-Safety or any other corporation, partnership, limited liability company, sole proprietorship engaged in the business of providing

safety services and products, including, but not limited to, the rental and sale of safety gear and toxic gas detection equipment, fire suppression services, the design, installation, and repair of gas detection equipment, and the training, consulting, and inspection of general and fire safety procedures, for a period of 12 months within the geographical limits of the Louisiana Parishes of Ascension, Assumption, East Feliciana, Iberia, Iberville, Jefferson, Lafayette, Lafourche, Orleans, Plaquemines, Pointe Coupee, St. Bernard, St. Charles, St. Landry, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Washington, West Baton Rouge, and West Feliciana; as well as Decatur, Alabama; Chicago, Illinois; Dolton, Illinois; Philadelphia, Pennsylvania; and Essington, Pennsylvania;

B.     Rendering any service, assistance, advice or consultation—whether, directly or indirectly, as a principal, agent, employee, contractor, consultant, volunteer, financier or otherwise—to 24Hr-Safety or other corporation, partnership, limited liability company, sole proprietorship engaged in the business of providing safety services and products, including, but not limited to, the rental and sale of safety gear and toxic gas detection equipment, fire suppression services, the design, installation, and repair of gas detection

equipment, and the training, consulting, and inspection of general and fire safety procedures, for a period of 12 months within the geographical limits of the Louisiana Parishes of Ascension, Assumption, East Feliciana, Iberia, Iberville, Jefferson, Lafayette, Lafourche, Orleans, Plaquemines, Pointe Coupee, St. Bernard, St. Charles, St. Landry, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Washington, West Baton Rouge, and West Feliciana; as well as Decatur, Alabama; Chicago, Illinois; Dolton, Illinois; Philadelphia, Pennsylvania; and Essington, Pennsylvania;

C.     Owning, managing, operating, controlling, participating in or having any financial interest—whether, directly or indirectly, as a shareholder, partner, proprietor or otherwise—in 24Hr-Safety or any other corporation, partnership, limited liability company, sole proprietorship engaged in the business of providing safety services and products, including, but not limited to, the rental and sale of safety gear and toxic gas detection equipment, fire suppression services, the design, installation, and repair of gas detection equipment, and the training, consulting, and inspection of general and fire safety procedures, for a period of 12 months within the geographical limits of the Louisiana Parishes of Ascension,

Assumption, East Feliciana, Iberia, Iberville, Jefferson, Lafayette, Lafourche, Orleans, Plaquemines, Pointe Coupee, St. Bernard, St. Charles, St. Landry, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Washington, West Baton Rouge, and West Feliciana; as well as Decatur, Alabama; Chicago, Illinois; Dolton, Illinois; Philadelphia, Pennsylvania; and Essington, Pennsylvania;

D.   Soliciting—whether on his own behalf or on behalf of another—any customer or client who is or was serviced in whole or in part by Total Safety with the intent of selling or attempting to sell or providing to any such customer any safety services and products, including, but not limited to, the rental and sale of safety gear and toxic gas detection equipment, fire suppression services, the design, installation, and repair of gas detection equipment, and the training, consulting, and inspection of general and fire safety procedures, for a period of 12 months within the geographical limits of the Louisiana Parishes of Ascension, Assumption, East Feliciana, Iberia, Iberville, Jefferson, Lafayette, Lafourche, Orleans, Plaquemines, Pointe Coupee, St. Bernard, St. Charles, St. Landry, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Washington, West Baton Rouge, and West Feliciana; as well as Decatur, Alabama;

Chicago, Illinois; Dolton, Illinois; Philadelphia, Pennsylvania; and Essington, Pennsylvania;

E.  Requesting or advising any client, customer or contractor of Total Safety to withdraw, curtail, reduce or cancel its business with Total Safety or making any disparaging communications regarding Total Safety (and any its subsidiaries, operations, officers, directors, or investors) for a period of 12 months within the geographical limits of the Louisiana Parishes of Ascension, Assumption, East Feliciana, Iberia, Iberville, Jefferson, Lafayette, Lafourche, Orleans, Plaquemines, Pointe Coupee, St. Bernard, St. Charles, St. Landry, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Washington, West Baton Rouge, and West Feliciana; as well as Decatur, Alabama; Chicago, Illinois; Dolton, Illinois; Philadelphia, Pennsylvania; and Essington, Pennsylvania;

F.  Soliciting or inducing—whether, directly or indirectly, as an owner, officer, director, partner, employee, contractor, consultant or otherwise—any employee of, or consultant to, Total Safety or any of its subsidiaries to leave the employ of Total Safety, or any such Subsidiary, or in any way interfere with the any employee's or

consultant's relationship with Total Safety or any of its subsidiaries for a period of 12 months;

G.   Hiring any person who was an employee of or consultant to Total Safety or any of its subsidiaries for a period of 12 months; and

H.   Disclosing or using for his own purpose or any other purpose Total Safety's confidential information and trade secrets.

2.   That this Court set a date, time, and place for a hearing and give notice to Rowland to appear and show cause, if he can, why a preliminary injunction in the substance, form, and effect of the temporary restraining order should not issue;

3.   That after due proceedings this Court enter a permanent injunction perpetuating the substance, form, and effect of the temporary restraining order and preliminary injunction against Rowland, including such other injunctive relief to which Total Safety may be entitled based on the cause of action set forth in the Petition;

4.   That this Court render a judgment in favor of Total Safety and against Rowland materially breaching the Employment Agreement and awarding damages;

5.   That this Court render a judgment in favor of Total Safety and against Rowland, awarding Total Safety all of its attorneys' fees, expert fees, and

costs incurred by Total Safety as a result of Rowland's breaches of the Employment Agreement;

6.     That this Court render a judgment in favor of Total Safety and against Rowland, awarding all other relief to which Total Safety is entitled as a matter of contract, law, and equity.

Respectfully submitted this 10th day of October, 2013

       */s/ Thomas P. Hubert*
THOMAS P. HUBERT  (LA #19625)
JOSEPH F. LAVIGNE  (LA #28119)
P.J. KEE  (LA #34860)
***Jones Walker LLP***
201 St. Charles Avenue - 50th Floor
New Orleans, Louisiana  70170-5100
Telephone:  (504) 582-8000
Facsimile:  (504) 582-8015
Email:  thubert@joneswalker.com
Email:  jlavigne@joneswalker.com
Email:  pkee@joneswalker.com
***COUNSEL FOR PLAINTIFF,***
  ***TOTAL SAFETY U.S., INC.***

## CERTIFICATE OF SERVICE

I certify that on October 10, 2013, I electronically filed the foregoing *Verified Complaint for Damages and Injunctive Relief* with the Clerk of Court using the CM/ECF System which will send notification of such filing to all counsel of record.

 */s/ Thomas P. Hubert* 
THOMAS P. HUBERT

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TOTAL SAFETY U.S., INC.** | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO.**_____ |
| **versus** | § | |
| | § | **JUDGE** _____ |
| **GARY ROWLAND** | § | |
| **Defendant.** | § | **SECTION** _____ |
| | § | |

---

### VERIFICATION

---

I, Jerry Paul Johnson, swear under penalty of perjury that I am the Chief Operating

Officer of Plaintiff Total Safety U.S., Inc., that I have read the allegations in the

Complaint for Damages and Injunctive Relief, that all the allegations are true and correct

to the best of my knowledge, information, and belief, and that a true and correct copy of

the Employment Agreement, with the effective date of November 15, 2005, is attached to

the Complaint for Damages and Injunctive Relief as Exhibit 1.

_____
Jerry Paul Johnson