UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**TOTAL SAFETY U.S., INC**                                   **CIVIL ACTION**

**VERSUS**                                                   **NO. 13-6109**

**GARY ROWLAND ET AL.**                                      **SECTION "B"(4)**

<u>ORDER AND REASONS</u>

<u>Nature of Motion and Relief Sought</u>:

Before the Court are Total Safety U.S., Inc.'s ("Plaintiff" or "Total Safety") Motion for Leave to File Second Amended Complaint (Rec. Doc. 97) and third Motion for Temporary Restraining Order and Preliminary Injunction Hearing (Rec. Doc. 98). Both Defendant Gary Rowland ("Rowland") and 24 Hour Safety, LLC ("24 Hour Safety") have filed opposition to both motions. (Rec. Docs. 107-110).[1] Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Leave to File Second Amended Complaint (Rec. Doc. 97) is **GRANTED**, and Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction Hearing is **DENIED** (Rec. Doc. 98).

**IT IS FURTHER ORDERED** that Total Safety's Motions for Leave to File replies (Rec. Docs. 111 & 114) and Rowland's Motion for Leave to File a supplemental memorandum and Motion to Strike Total Safety's reply (Rec. Docs. 112 & 113) are **DISMISSED as moot.**

---

[1] The briefs were sufficient to allow resolution of the subject motions without oral argument.

Procedural History and Facts of the Case:

This case arises from Rowland's decision to leave the employ of Total Safety for that of 24 Hour Safety in October of 2013. (Rec. Doc. 1 at 1). Rowland resigned on October 6, 2013, and Total Safety initiated this suit four days later, asserting a single claim for breach of an employment agreement and seeking injunctive relief restraining Rowland from working for 24 Hour Safety in certain regards. *Id.* at 10-13. The employment agreement then in question was originally signed in 2005, was renewed on a regular basis, and contained restrictive covenants under which Rowland agreed to refrain from certain competitive activities (hereinafter referred to as the "Employment Agreement") *Id.* at 2-7. Generally, those covenants provided that Rowland would neither work for Total Safety's competitors nor solicit its employees to the same within certain geographical areas, which were mostly defined in terms of Louisiana Parishes. *Id.* Calcasieu Parish was not within those geographical areas.

After a telephonic hearing, the Court granted Plaintiff's TRO request on October 11, 2013. (Rec. Doc. 7). Ten days later, on Rowland's motion and with his consent, the Court extended the TRO by two weeks and continued a previously scheduled preliminary injunction hearing by roughly the same period. (Rec. Doc. 17). On October 21, 2013, just two days after the TRO was extended, Total

Safety filed a First Amended Complaint ("FAC"), alleging that Rowland not only breached his Employment Agreement but also acted in concert with 24 Hour Safety to steal valuable trade secrets and confidential information before his October 6 resignation. (Rec. Doc. 18). On those grounds, the FAC added 24 Hour Safety as a defendant and asserted claims for (i) Breach of Employment Agreement, (ii) Misappropriation of Confidential Information and Trade Secrets, (iii) Unfair Trade Practices, (iv) Conversion, (v) Breach of Fiduciary Duty, (vi) Conspiracy, (vii) Violation of the Computer Fraud and Abuse Act, and (viii) Violation of the Federal Stored Communications Act. (Rec. Doc. 18). The FAC was accompanied by a Motion for renewed and expanded injunctive relief restricting Rowland from competing in any way with Total Safety. (Rec. Doc. 19). Concurrent with the FAC, Total Safety also filed a Motion for Contempt, contending that Rowland violated the TRO then in place by working for 24 Hour Safety and soliciting Total Safety's customers within restricted areas. (Rec. Doc. 20). On October 28, 2013, after a second telephonic hearing, the Court granted the new TRO request in part and enjoined Rowland from working in geographic areas covered by the Employment Agreement and from soliciting Total Safety's customers within the same, but denied to the extent it sought injunctions on a national or company-wide level. (Rec. Docs. 30 & 33).

On December 16, 2013, after several days of hearing and upon

consideration of the parties' numerous memoranda, the Court entered a Preliminary Injunction against Rowland, limited in scope to the terms set forth in the 2005 Employment Agreement, and granted Plaintiff's motion for contempt as to Rowland. (Rec. Doc. 84, 95, & 96).

On February 2014, Total Safety sought leave to file a Second Amended Complaint ("SAC"), which in most respects mirrored the FAC, but added claims for specific performance against 24 Hour Safety and new grounds for Breach as to Rowland. (Rec. Doc. 97 & 97-1). Both of these claims are premised on alleged violations of distinct agreements not squarely at issue in prior hearings or motions.

As to Rowland, the SAC alleges that Rowland breached a separate 2011 "Unit Award Agreement," which he entered into with non-party W3 Holdings, a Delaware entity that acquired Total Safety around the same time. (Rec. Doc. 97-1 at 11, 39-40). Total Safety further alleges that under this Unit Award Agreement, Rowland received profit interests in exchange for his promise to refrain from competing with or soliciting Total Safety's customers in a defined geographic area that explicitly included Calcasieu Parish. (Rec. Doc. 97-1 at 12).[2] Finally, the SAC

---

[2] The agreement itself does not mention Total Safety by name. (The agreement in full is at Rec. Doc. 97-3). Rather, the non-solicitation and non-compete provisions, which appear in an exhibit to the Unit Award Agreement, provide that Rowland would not compete with or solicit from "the Company," elsewhere defined as W3 Holdings. (Rec. Doc. 97-3 at 2 & 9).

alleges that in January of 2014, several months after initiation of this suit and roughly a month after the preliminary injunction hearing, Rowland violated the Unit Award agreement by soliciting customers in Calcasieu Parish. *Id.* at 40. On these grounds Total Safety also seeks a third TRO and expanded preliminary injunction restricting Rowland from, inter alia, (i) working for 24 Hour Safety, (ii) soliciting business from Total Safety's customers, and (iii) soliciting Total Safety's employees within certain parishes, including Calcasieu, which are covered by the Unit Award Agreement but not by the Employment Agreement. (Rec. Doc. 98-1).

The Court now reviews the law, alleged facts, and contentions concerning both Total Safety's request for leave to file a complaint and accompanying motion for a TRO and preliminary injunction hearing.

DISCUSSION

I. Plaintiff's Motion for Leave to File Second Amended Complaint

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). "Whether to grant leave to amend a complaint is entrusted to the sound discretion of the district court [.]" *Ballard v. Devon Energy Prod. Co., L.P.*, 678 F.3d 360, 364 (5th Cir. 2012). "The trial court can consider many factors in

exercising its discretion, 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment.'" *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir. 1980)(quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)(abrogated on other grounds by *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 536 n. 33 (1983).

Here, in seeking leave to file a second amended complaint, Plaintiff briefly argues that both defendants consented to such leave. (Rec. Doc. 97 at 1). In short, Plaintiff argues that both Defendants consented by proposing a scheduling order that would allow parties to amend complaints or counterclaims until 30 days after a scheduling order issued. *Id.* The Court does not read such general proposals as consent to the amendment at issue here. This contention, moreover, is most obviously contradicted by the fact that both Defendants have strenuously opposed allowing the amendment in numerous filings. (Rec. Docs. 107-110, 112). Thus, whether leave should be granted is left to the sound discretion of the Court.

The Defendants argue that leave should be denied on the grounds that the amendments sought are futile, follow undue delay, and would cause prejudice to both Defendants and the

Court. (Rec. Docs. 107 & 108). These contentions are addressed in turn below.

A. Futility of the Amendments

Leave to amend should be denied if the amendments would be futile and subject to immediate dismissal. *Pan-Islamic Trade Corp.*, 632 F.2d at 546 ("Clearly, if a complaint as amended is subject to dismissal, leave to amend need not be given.") Thus, when reviewing a claim of futility, the court will assume the truth of the complaint's allegations. *See*, *e.g.*, *SmithKline Beecham Corp. v. Geneva Pharm., Inc.*, 287 F. Supp. 2d 576, 581 (E.D. Pa. 2002).

The Defendants contend that Plaintiff's breach against Rowland for violating the Unit Agreement is futile on several grounds. First, Rowland argues that Total Safety lacks standing to enforce the Unit Agreement. (Rec. Doc. 108 at 6). In support, he cites no authorities, but emphasizes the salient fact that Total Safety is neither named by nor a party to that agreement. *Id.* At this juncture, however, Plaintiff's breach claim as premised on the Unit Agreement should not be "dismissed" for lack of standing because "it is well settled that a person who is not a party to a contract may nevertheless have standing to enforce the contract if it was made for that person's benefit." *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 602 (5th Cir. 2000). At this juncture, where the Court considers only whether

to grant leave to amend and the hurdles are low, Plaintiff's proposed second amended complaint contains allegations sufficient to find that the contract was made for its benefit. Language in the restrictive covenants of the Unit Award Agreement suggests that the purpose of those covenants are to protect value to W3 holdings and "its affiliates" (Rec. Doc. 97-3 at 5), and Total Safety alleges that it is one of those "subsidiaries/affiliates" (Rec Doc. 97-1 at 11). Accordingly, the amended breach claim is not futile for lack of standing. The Court notes, however, that Defendants will not be barred from addressing this standing issue in other motions once all parties have had more time to research and prepare.

    Next, the Defendants contend the amended breach claim is futile because it is unenforceable under La. Rev. Stat. 23:921. In short, the Defendants argue that Unit Agreement is unenforceable because W3 Holding is not Rowland's employer, is not in engaging in business similar to that of 24 Hour safety, and is not engaging in that industries within relevant parishes as required by La. Rev. Stat. 23:921. While these arguments raise grave doubts about the validity of Total Safety's amended breach claim, as discussed in the section below, the Court finds the claim sufficiently stated to allow the amendment.

    For similar reasons Defendants' remaining contentions regarding the futility of the amended breach claim––whether

consideration exists and whether the terms of that agreement reach Total Safety (Rec. Docs. 107 at 3-5 & 108 at 9)--are again insufficient to deny Plaintiff leave to amend as to that claim. These arguments delve too deeply into the disputed merits of the factual and legal claims, which the Court considers more properly addressed through further briefs and upon motions for dismissal or summary judgment.

As for Plaintiff's Specific Performance claim against 24 Hour Safety, the Court finds this claim as near to frivolousness and bad faith as a claim can be without the inducing the requisite consequences. In brief, Total Safety claims to be a third-party beneficiary to 24 Hour Safety's indemnity agreement with Rowland, under which the former allegedly agreed to indemnify the latter against damages potentially owed to Total Safety. (Rec. Doc. 97-1 at 41 to 42). The Supreme Court of Louisiana has delineated three requirements for such claims. *See Joseph v. Hosp. Serv. Dist. No. 2 of Parish of St. Mary*, 939 So. 2d 1206, 1212 (La. 2006). The first and "primary question" is whether the contract clearly manifests an intention to benefit a third party. *Id.* It is not necessary that this intention be in writing, *Id.* at 1215, but a it is "never presumed" and will "only be found when the contract *clearly* contemplates the benefit to" the putative third-party beneficiary. *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1147 (5th Cir. 1993)(emphasis

in original). Additionally, there must be "certainty as to the benefit provided the third party," and the benefit must not be "a mere incident of the contract between the promisor and the promisee." *Joseph*, 939 So. 2d at 1212. Here, basic common sense, not to mention 24 Hour Safety's memoranda, is enough to discern that such clear and certain intent will almost certainly not be found. Nevertheless, since that agreement is not in the record and its terms have not been sufficiently addressed, the Court leaves resolution of this issue for another day. Total Safety is warned, however, that it is pushing the envelope dangerously close to meritless legal theories.

B. Untimeliness & Prejudice

Defendants also argue that leave should be denied because it was sought in an untimely manner and to the prejudice of both Defendants and the Court. (Rec. Docs. 107 at 5-7 & 108 at 4-5). Their argument is essentially that Plaintiff has known of the Unit Agreement since before the inception of this suit and therefore should have previously sought recovery for and injunctions protective of its breach. In so arguing the Defendants fail, however, to acknowledge that the claim arises from facts alleged to have happened in January of 2014, when Rowland allegedly solicited Total Safety's customer in Calcasieu Parish, well after this suit began and roughly a month after the preliminary injunction hearing. (Rec. Doc. 97-1 at 40). Simply

put, the facts alleged establish that Plaintiff's claim under the Unit Agreement had not accrued until after the hearing concluded and after a preliminary injunction issued.

For the above and other reasons it is therefore **ORDERED** that Plaintiff's Motion to File Second Amended Complaint is **GRANTED**. (Rec. Doc. 97).

II. Plaintiff's Motion For Temporary Restraining Order and Order to Show Cause for Preliminary Injunction

**IT IS FURTHER ORDERED** that Plaintiff's Motion for a Temporary Restraining Order and Preliminary Junction is **DENIED.**

Total Safety seeks a third TRO and expanded preliminary injunction restricting Rowland from, inter alia, (i) working for 24 Hour Safety, (ii) soliciting business from Total Safety's customers, and (iii) soliciting Total Safety's employees within certain parishes enumerated in the Unit Award Agreement. (Rec. Doc. 98-1).

Rule 65 of the Federal Rules of Civil Procedure governs both preliminary injunctions and temporary restraining orders. A party requesting either form of relief must demonstrate: 1) a substantial likelihood of success on the merits, 2) a substantial threat that failure to grant the injunction will result in irreparable injury, 3) the threatened injury must outweigh any damage that the injunction will cause to the adverse party, and 4) the injunction must not have an adverse effect on the public

interest. *City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 527 (5th Cir.1983). A temporary restraining order is an "extraordinary remedy and should be granted only if the movant has clearly carried the burden of persuasion with respect to all four factors." *Allied Mktg. Group, Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir.1989)

Here, Plaintiff has failed to carry that burden. Primarily, Plaintiff has not established a likelihood of success on the merits. As indicated above, the Court has grave doubts that the restrictive covenants in the Unit Award Agreement are enforceable under Louisiana law. Louisiana has a "longstanding policy against covenants not to compete[,]" which is codified at La. RS 23:921. *Team Envtl. Servs., Inc. v. Addison*, 2 F.3d 124, 126-27 (5th Cir. 1993). That statute provides that contracts restraining anyone's "lawful profession, trade, or business of any kind . . . shall be null and void" unless one of several statutory exceptions apply. La. RS 23:921(A)(1). Given Louisiana's strong policy against such contracts, they must "strictly comply" with the terms of those exceptions to be enforceable. *Team Envtl. Services, Inc.*, 2 F.3d at 126-27 (citation and quotations omitted).

The only relevant exception here is found at La. RS 23:921(c), which provides:

> Any person . . . who is employed as an agent, servant, or employee may agree with <u>his employer </u>to refrain from . . . engaging in a business similar to that of the

> employer and/or from soliciting customers of the employer within a specified parish or [or other areas] <u>so long as the employer carries on a like business therein</u>, not to exceed a period of two years from termination of employment.

La. RS 23:921(c)(emphasis added).[3]

Total Safety has not alleged and it does not appear for now that W3 Holdings is Rowland's employer. Moreover, Total safety has not alleged facts sufficiently establishing other requirements set forth in the statute. Given the 5th Circuit's mandate that restrictive covenants strictly comply with La. RS 23:921 and Louisiana's longstanding policy against enforcement of such agreements, the Court finds that Total Safety has not established a reasonable probability of success on the merits of its breach claim premised on the Unit Award Agreement.[4]

Conclusion

Plaintiff has alleged facts and made argument sufficient to allow amendment but fails to demonstrate probability of success on the ultimate merits.

---

[3] It remains possible that the exception provided in La. RS 23:921(L), which allows for certain restrictive covenants between limited liability companies and their members, will apply since W3 Holdings is a LLC. However, Total Safety has not alleged that Rowland was a member of that entity, only that he received "profit interests" in exchange for certain promises. Moreover, as the terms of subsection (L) largely mirror those of subsection (C), the outcome would be the same for the above-mentioned and other reasons.

[4] Total Safety is again warned that seeking further leave to make cursory allegations to satisfy these elements will be subject to strict review under applicable laws. Moreover, the Court will not countenance piecemeal amendments that disrupt orderly process or efforts that tend to keep alive terminable claims in perpetuity.

**IT IS ORDERED** that Plaintiff's Motion for Leave to File Second Amended Complaint (Rec. Doc. 97) is **GRANTED**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for a Temporary Restraining Order and Preliminary Junction Hearing (Rec. Doc. 98) is **DENIED.**

**IT IS FURTHER ORDERED** that Total Safety's Motions for Leave to File replies (Rec. Docs. 111 & 114) and Rowland's Motion for Leave to File a supplemental memorandum and Motion to Strike Total Safety's reply (Rec. Docs. 112 & 113) are **DISMISSED as moot.**

New Orleans, Louisiana, this 24th day of February, 2014.

_____
UNITED STATES DISTRICT JUDGE