**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TOTAL SAFETY U.S., INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO:**      **13-6109** |
| **GARY ROWLAND, ET AL.** | **SECTION: "B" (4)** |

**ORDER**

Before the Court is Plaintiff, Total Safety U.S., Inc.'s ("Total Safety") **Plaintiff's Second Motion to Compel Compliance with the Protocol (R. Doc. 103).** The motion is opposed. *See* R. Doc. 119 & 121. A reply was filed. *See* R. Doc. 130. A sur-opposition was also filed. *See* R. Doc. 140. The motion was filed on February 18, 2014, and referred to the undersigned on April 7, 2014. *See* R. Doc. 144. The matter was rescheduled to be heard with oral argument on April 23, 2014.

**I.**     <u>**Background**</u>

This case arises from Defendant Gary Rowland's ("Rowland") decision to leave his employment with Plaintiff, Total Safety ("Total Safety") for that of 24 Hour Safety in October of 2013. *See* R. Doc. 1, p. 1. Rowland resigned on October 6, 2013, and Total Safety initiated this suit four days later, asserting a single claim for breach of an employment agreement and seeking injunctive relief restraining Rowland from working for 24 Hour Safety in certain regards. *Id.* at 10-13. The employment agreement was originally signed in 2005 and contained restrictive covenants under which Rowland agreed to refrain from certain competitive activities (hereinafter referred to

as the "Employment Agreement") *Id.* at 2-7. Generally, those covenants provided that Rowland would neither work for Total Safety's competitors nor solicit its employees to the same within certain geographical areas, which were mostly defined in terms of Louisiana Parishes. *Id.* Calcasieu Parish was not within those geographical areas.

After a telephone hearing, the Court granted Plaintiff's TRO request on October 11, 2013. *See* R. Doc. 7. Ten days later, on Rowland's motion and with his consent, the Court extended the TRO by two weeks and continued a previously scheduled preliminary injunction hearing by roughly the same period.  *See* R. Doc. 17. On October 21, 2013, just two days after the TRO was extended, Total Safety filed a First Amended Complaint, alleging that Rowland not only breached his Employment Agreement, but that he acted in concert with 24 Hour Safety to steal valuable trade secrets and confidential information before his October resignation. *See* R. Doc. 18.

The Amended Complaint added 24 Hour Safety as a defendant and asserted claims for (i) Breach of Employment Agreement, (ii) Misappropriation of Confidential Information and Trade Secrets, (iii) Unfair Trade Practices, (iv) Conversion, (v) Breach of Fiduciary Duty, (vi) Conspiracy, (vii) Violation of the Computer Fraud and Abuse Act, and (viii) Violation of the Federal Stored Communications Act. *Id.* The Amended Complaint was also accompanied by a Motion for renewed and expanded injunctive relief restricting Rowland from competing in any way with Total Safety. *See* R. Doc. 19.

Concurrent with the Amended Complaint, Total Safety also filed a Motion for Contempt, contending that Rowland violated the TRO then in place by working for 24 Hour Safety and soliciting Total Safety's customers within restricted areas. *See* R. Doc. 20. Thereafter, on October 28, 2013, after a second telephonic hearing, the Court granted the new TRO request in part and

2

enjoined Rowland from working in geographic areas covered by the Employment Agreement and from soliciting Total Safety's customers within the same area, but denied it to the extent it sought injunctions on a national or company-wide level. *See* R. Docs. 30 & 33.

On December 18, 2013, the Court entered a Preliminary Injunction against Rowland, limited in scope to the terms set forth in the 2005 Employment Agreement, and granted Total Safety's motion for contempt as to Rowland, but denied it as to 24 Hour Safety. *See* R. Docs. 84, 95, & 96. Thereafter, on February 12, 2014, the Court issued a "Preliminary Injunction Order" prohibiting Rowland from rendering any services to or for 24 Hour Safety or any competing business in areas the Court found to be "restricted areas" and prohibited a host of other actions on behalf of Rowland. *See* R. Doc. 95-96. Also on February 12, 2014, the Court issued an Order for Contempt and Appointing Special Master Monitor Compliance with the Preliminary Injunction Order, appointing Brian Roux, to act as a special master to monitor Rowland's compliance with this Court's preliminary injunction. *See* R. Doc. 96.

As to the instant motion, on February 18, 2014, Total Safety filed its second motion to compel compliance with the protocol, contending that on October 28, 2013, this Court granted their request for forensic examinations and ordered the parties to submit a corresponding protocol by October 29, 2013. *See* R. Doc. 103. After negotiating the terms, the parties agreed upon the protocol that Total Safety filed with the Court. *Id.,* at p. 1; citing R. Doc. 31-1, pp. 28-37.

Total Safety contends that the "Protocol" reflects the agreed-upon scope and procedures for the Court ordered forensic examinations, which identified the digital forensic company, RVM, Inc., as Total Safety's Forensic Vendor, to which both Rowland and 24 HR Safety had "no objection." *See* R. Doc. 103-1, p. 2, citing R. Doc. 31- 1, p. 26 ¶ 1.  Total Safety contends that Rowland and 24

HR Safety retained its own digital forensic company, Avansic, to oversee RVM's examinations and assist with Rowland's and 24 HR Safety's review/production of the forensic files. *Id.* at p. 3. Total Safety contends that the parties agreed that RVM would meet with Rowland and 24 Hour Safety on November 1, 2013, so that RVM could create forensic images of certain computers, devices, and email accounts for various custodians. Total Safety contends that the initial examinations occurred simultaneously at two different locations: one in Deer Park, Texas, ("Deer Park") and in Geismar, Louisiana ("Geismar"). *See* R. Doc. 103-1, p. 3.

However, after conducting these examinations, Total Safety argues that Defendants allegedly failed to comply with some of their production requests. *See* R. Doc. 103, p. 1. Therefore, on February 18, 2014, after conferring in accordance with Fed. R. Civ. P. 37, Total Safety filed the instant motion, alleging the following deficiencies with Defendants responses:

(a)     24 HR Safety failed to provide Todd Dartez's iPhone for forensic imaging during the initial collection and has not allowed Total Safety to re-image it;

(b)     24 HR Safety has not allowed Total Safety to conduct a full examination of Amy Hains's iPhone;

(c)     24 HR Safety has produced none of the files collected from Hains's external devices;

(d)     24 HR Safety withheld at least 3,600 files from the email accounts of Trent Smith, Lamoine Reyes, and Jeff Ellenberg because they pre-date July 1, 2013;

(e)     24 HR Safety withheld several thousand files based on relevance;

(f)     24 HR Safety produced no log detailing which files were withheld—and the reasons why—from its employees' computers and devices; and

(g)     Rowland and 24 HR Safety produced two privilege logs relating to files from email

4

accounts and Rowland's devices—minus his discarded iPhone—without adequate descriptions that would allow Total Safety or this Court to access the privilege claim.

As such, Total Safety requests that this Court order Defendants, 24 Hour Safety and Rowland to comply with the ESI protocol as follows:

(a)     Provide a time/place for RVM, Inc., to conduct forensic examinations of Dartez's and Hains's iPhones within five days of this Court's order;

(b)     Produce all non-privileged files from Hains's devices within 5 days of this Court's order;

(c)     Produce all non-privileged files from the email accounts of Smith, Reyes, and Ellenberg that pre-date July 1, 2013 within five days of this Court's order;

(d)     Produce all files withheld for relevance within five days of this Court's order;

(e)     Produce all outstanding privilege logs within five days of this Court's order; and

(f)     Amend the current privilege logs to provide adequate descriptions within 5 days of this Court's order and further ensure that any outstanding privilege logs contain sufficient descriptions.

## II.    <u>Standard of Review</u>

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 176 (1979). Nevertheless, discovery

does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.* at 26(b)(2)(C)(iii).

Rule 26(b)(3) provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party in its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." *Id.* However, such materials may be discoverable when either allowed by Rule 26(b)(1), or when a party shows a "substantial need" for the information and that obtaining the information by another means would pose an "undue hardship." *Id.*

Rule 34 provides that a party may request another party to produce "any designated documents or electronically stored information ... stored in any medium from which information can be obtained." *Id.* at 34(a)(1)(A). This request "must describe with reasonable particularity each item or category of items to be inspected." *Id.* at 34(b)(1)(A). "The party to whom the request is directed must respond in writing within 30 days after being served." *Id.* at 34(b)(2)(A). "For each

6

item or category, the response must either state that inspection ... will be permitted as requested or state an objection to the request, including the reasons." *Id.* at 34(b)(2)(B). Although Rule 34 does not provide that untimely objections are waived, the Fifth Circuit has found that the waiver provision applies equally to Rule 34. *See In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989).

## III.  Analysis

Total Safety seeks this Court compel Defendants to produce (a) Todd Dartez's iPhone for forensic imaging (b) Amy Hains's iPhone; (c) files withheld based on 24 Hour Safety's objections based on relevance and privilege and (d) privilege logs as to the documents which privilege has been claimed. The Court shall address each of Total Safety's issues as set forth in its motion.

### A.  Todd Dartez's iPhone

Total Safety contends that the first deficiencies in production occurred in violation of paragraph 3 of the protocol, which provided that "any computer, handheld device (like BlackBerries, iPhones, and iPads), external hard drive, and any other storage device utilized by Rowland, Dartez, or Hains after July 1, 2013, (collectively, the "Computers and Devices") are subject to the Protocol. *See* R. Doc. 103-1, p. 3; citing R. Doc. 31-1, pp. 26-27, ¶ 3.

Total Safety contends however that when the Deer Park team met Rowland, Dartez, Tony Aube - 24 Hour Safety's IT officer, Kindall James - Rowland's attorney, and Joel Sallee - an Avansic representative, they were only provided access to the following computers and devices: (1) Dartez's C5120 Milano flip-phone; (2) Dartez's 24 HR Safety computer; (3) Rowland's iPhone 4s, for which Total Safety contends was discarded on November 10; (4) Rowland's iPad; and (5) Rowland's 24 Hour Safety computer. Therefore, Total Safety contends that it did not receive access to (1) Dartez's iPhone and (2) could not collect usable images from Rowland's iPhone 4S because

it was encrypted. *See* R. Doc. 103-1, p. 4.

Total Safety contends that Dartez's iPhone is relevant because it was used by Dartez after the July 1, 2013 relevancy date, which was defined by the parties. Therefore, Total Safety contends that the phone is subject to the Protocol. *See* R. Doc. 103-1, p. 8. As such, Total Safety contends that on October 30, 2014, counsel for 24 Hour Safety indicated that Dartez uses two phones, one of which is his iPhone. *Id.* However, RVM was not provided the iPhone for imaging at the inspection, nor has it since been provided the iPhone for inspection. Therefore, Total Safety seeks an Order from this Court to compel the inspection and production of Dartez's iPhone 5s.[1]

In opposition, 24 Hour Safety contends that it should not have to produce Dartez's iPhone for imaging because on October 30-31, 2013, email communications between the parties evidence that Total Safety was aware of the existence of Dartez's iPhone, and its availability to be collected on November 1, 2013. *See* R. Doc. 121, p. 6. However, RVM, Total Safety's forensic imaging experts failed to image the phone on November 1, 2013. As such, 24 Hour Safety contends that it should not be required to reproduce the phone for imaging when it was the fault of Total Safety's forensic imaging expert that the phone was not properly imaged.

During oral argument counsel for the Defendants indicated that Dartez had two phones, and during the inspection, their representative only imaged one of the phones but was unable to image the iPhone. As such, Dartez's iPhone was never imaged or produced to Total Safety.

Because the parties identified Dartez as one of the owner's of 24 Hour Safety, and thus is a key player in this action, the Court found that Dartez's iPhone is relevant and encompassed by the

---

[1]\As to Rowland's iPhone, Total Safety contends its team alerted everyone at the Deer Park site, including Rowland, James and Sallee about the encryption issue. *Id.* Total Safety filed a separate motion for sanctions on the encryption issue, which has since been denied as premature by the presiding District Judge. *See id.,* citing R. Docs. 101, 144.

parties agreed upon protocol as a discoverable computer device. As such, Total Safety's request to inspect the phone is granted. The inspection is to take place at the Deer Park site.  The date of this examination will be confirmed in the Court's Discovery Conference Order, which will be issued at a later date.

**B.    Hains's iPhone 5**

Total Safety contends that at the Geismar inspection, its team met with Hains and 24 Hour Safety's counsel, Eric Miller, and an Avansic representative, where RVM was provided the following computers and devices: (1) Hains's iPhone, (2) Hains's 24 Hour Safety Computer and (3) Hains's external hard-drives. *See* R. Doc. 103-1, p. 4. However, upon inspection, Total Safety contends that its team was unable to collect usable images from Hains's iPhone because it was corrupted. *Id.* at p. 8. Total Safety contends that it also notified the Avansic representative and sent them the exact images that RVM collected from Hains's iPhone. *Id.* at 9, n. 5.

However, Total Safety contends that as of yet, neither Avansic, nor 24 Hour Safety has provided usable files for production to Total Safety for this device. *Id.* at 9. Total Safety contends that it also requested that 24 Hour Safety re-produce Hains's iPhone for imaging, but that they have failed to allow the requested imaging. *Id.* As such, Total Safety seeks an Order from this Court compelling usable images of Hains's iPhone.

In opposition, 24 Hour Safety contends that it has since produced all data from Amy Hains's cell phone and computer, except for privileged communications, from July 1, 2013 to date. *See* R. Doc. 121, p. 1. It also contends that it is unsure why RVM was unable to obtain an uncorrpuuted image of Hains' phone, as no issue with the imaging of the phone was reported until approximately three months after the initial image collection was performed. *See* R. Doc. 121, p. 7. Thus it

9

contends that it should not be required to produce information (1) which it has already produced and (2) which is due to an error of Total Safety's expert. *Id.*

During oral argument, counsel for Total Safety represented that its expert imaged Hains's iPhone on site, but that once he went back to the computer lab to image the files, it realized that the data was corrupted and not readable. Counsel for Total Safety indicated that neither he, his client, or the IT personnel who imaged the phone knew the underlying reason why the file was corrupted.

Counsel for Total Safety also sites to the affidavit of Evan Fuest, the forensic engineer for RVM, who imaged Hains's iPhone. *See* R. Doc. 103-3, pp. 2-3. In his affidavit, Fuest testified that he uploaded Hains's phone onto his forensic equipment, and the equipment indicated that the image upload had been completed without error. However, upon his arrival back in his New York office, Fuest testified that he placed all the images from the phone into a program developed by one of their forensic equipment manufacturers to analyze and report on the collected images, where it was then revealed that the image files from Hains's collection were corrupt. *Id.* at 3, ¶ 14-16. He testified that he then communicated with a forensic equipment manufacturer, but neither he nor the manufacturer were able to conclude why the files were corrupt.

Upon further questioning, Total Safety, much like Fuest's affidavit, could not attest to the specific reasoning why the imaging first seemed to have successfully uploaded but then later was corrupted. Furthermore, counsel for 24 Hour Safety indicated that he had seen the images before from those captured by his own expert, Avansic, and that there did not seem to be any corruption therein. Based on the conflicting evidence, as well as the potential that it was an error on the part of Total Safety's expert, the Court was not persuaded by the affidavit of Fuest or the argument of Total Safety as to why the corruption occurred, and deferred its ruling on this issue until Total

Safety's expert could provide the Court with assurance that if the phone and / or data were reproduced for imaging, the encryption error would not reoccur.

During a discovery conference that occurred on April 24, 2014 with the undersigned, counsel for Total Safety provided the Court with an additional affidavit of Gregory Cancilla, the Director of Forensics for RVM, Inc. In his affidavit, Cancilla stated that RVM intends to change the process within which it imaged Hains's iPhone the first time, by performing the full examination on site, rather than completing the analysis at RVM's laboratory in New York. *See* attached Affidavit, at ¶¶ 4-6. Therefore, he suggests that RVM will be able to confirm on the site of the examination whether a usable image can be extracted from the iPhone. *Id.*

During the discovery conference, which will be addressed in full detail in a subsequent order to be issued by the Court, 24 Hour Safety indicated to the Court that Hains's iPhone was no longer in her possession, as she allegedly lost it while aboard a boat on Folse River, as it went overboard. Counsel for 24 Hour Safety did however represent that the device had been "backed up" as of March 2014, and that the back up information would be available for re-imaging. However the format of the back up was unable to be confirmed by counsel for 24 Hour Safety.

During the conference, Total Safety also indicated that it sought for its lawyers to be present on site when its expert re-images the phone. 24 Hour Safety expressed concerns since the previous imaging did not produce readable results. As a result, the Court suggested the use of the Special Master, Brian Roux, who had been previously agreed to by the parties and appointed by the Court. The Court also ordered Total Safety to bear the costs of the Special Master's re-imaging of Hains's iPhone. The Court further agreed to contact Special Master Brian Roux and request that he select three (3) days he would be available to conduct the re-imaging of Hains's iPhone. As such, Total

Safety's request was granted.

**C.     24 Hour Safety Production**

Total Safety contends that Paragraphs 4-7 of the Protocol explained the process within which RVM must process the images collected during the forensic examinations, which included an agreed upon set of search terms, that RVM would use the terms to run targeted searches across all the collected forensic images. *See* R. Doc. 103-1, pp. 5-6; citing R. Doc. 31-1, p. 27, ¶¶ 4-7. Total Safety contended that RVM would then take all the files that contained a search term, run a de-duplication program to remove duplicates, and then would produce the de-duplicated files to Avansic. *Id.* Then, Rowland and 24 Hour Safety had five days to review the files for privilege and create a privilege log with descriptions for any withheld files. *Id.* citing R. Doc. 31-1, at ¶8.  Total Safety contends that not only did 24 Hour Safety and Rowland fail to meet the five day production deadline, but that they also allegedly withheld approximately 15,000 files. *See* R. Doc. 103-1, p. 6.

In opposition, 24 Hour Safety contends that even though there was a protocol in place, it never agreed to produce irrelevant and immaterial information outside of the time of the solicitation and hiring of Rowland, or after July 1, 2013. *See* R. Doc. 121, p. 7. Furthermore, 24 Hour Safety contends that Total Safety agreed that this date was a reasonable and relevant cut off date, and that it did not agree that the production of collected date would be unlimited in time. *Id.* at 7-8. Thus, 24 Hour Safety contends that it did not waive its objection to relevancy and immaterial requests or production of files outside the relevant time period of July 1, 2013. *Id.* at 8. As such, it contends that Total Safety's requests should be denied.

The Court will address the alleged production failures as set forth in Total Safety's motion:

**1.     Several thousand files improperly withheld for "relevance"**

Total Safety contends that 24 Hour Safety has improperly withheld thousands of files based on relevance, which is not supported by the terms set forth in the Protocol. Specifically, Total Safety contends that the Protocol, does not allow files containing the agreed-upon search terms to be withheld for "relevance," and unambiguously states that "Rowland and 24 Hour Safety can only withhold documents based on 'privilege'." *See* R. Doc. 103-1, p. 10; citing R. Doc. 31-1, pp. 27-28, ¶¶ 5, 8. Therefore, Total Safety contends that no where in the protocol is there a provision which allows for the unilateral withholding of files containing the agreed-upon search terms based on relevancy. As such, Total Safety seeks an Order from this Court compelling 24 Hour Safety to comply with the protocol by producing all non-privileged documents being withheld for "relevance."

During oral argument, counsel for Total Safety represented to the Court that the parties had agreed in their protocol that files would only be withheld based on a party's assertion that these documents were privileged. As such, Total Safety contends that 24 Hour Safety now improperly asserted relevance as a basis for withholding documents.

Upon questioning by the Court, counsel for 24 Hour Safety conceded on the record that he agreed to the protocol, limiting the withholding of documents to only those which are based on privilege. *See* R. Doc. 31-1, pp. 27-28, ¶¶ 5-8.Therefore, the Court found that because the parties agreed to limit the withholding of documents to only files which may be considered privileged by the parties, 24 Hour Safety had to produce the documents as agreed to in the protocol. As such, Total Safety's request as to production of documents withheld based on relevance is granted. 24 Hour Safety has until **May 8, 2014**, to produce those files.

        **2.**        **Several Thousand Files Improperly Withheld Based on Date Restriction**

Total Safety contends that 24 Hour Safety withheld approximately 3,600 files from the

accounts of Smith, Reyes, and Ellenburg because the files pre-dated July 1, 2013, which is in violation of the protocol.

Total Safety contends that Paragraph 5 of the Protocol sets forth 24 Hour Safety's obligation to provide access to its employees' email accounts, which included providing their employees with temporary passwords to RVM, so that they could access the email accounts to create the forensic images. *See* R. Doc. 103-1, p. 4; citing R. Doc. 31-1, p. 27, ¶5. However, paragraph 5 contains no date restriction. *Id.* at p. 12. Paragraphs 7-8 of the protocol then set forth the procedure for producing 24 Hour Safety email account files containing the agreed-upon search terms. *Id*.

These paragraphs do not state however, that Rowland or 24 Hour Safety can withhold documents based on any date restriction. Total Safety contends that the only date restriction is contained in Paragraph 13, and concerns Rowland's personal Yahoo! Email Account, which indicates that RVM must run the agreed-upon search terms and then apply a date restriction to the files containing those terms. *Id.* at 13. As such, Total Safety seeks an Order from this Court compelling 24 Hour Safety to comply with the protocol by producing all non-privileged documents being withheld that pre-date July 1, 2013.

During oral argument, counsel for 24 Hour Safety conceded that the parties agreed upon protocol did not include a limitation date. However, upon further questioning by the Court, he indicated that during several depositions, including that of Hains as well as Dartez, it was revealed that communications between 24 Hour Safety and Rowland did not formally begin until July 1, 2013.

The Court therein questioned the parties as to when the earliest communication showing any interest, including preliminary discussions, between Rowland and 24 Hour Safety began, so as to

14

determine a date within which to restrict the search. In response, Total Safety argued that Rowland first showed interest in 24 Hour Safety over a year before his resignation from Total Safety, on or around October 6, 2013. Counsel for Total Safety also indicated that based on some of the documents produced in response to the undersigned's Order denying in part and granting in part Defendants' Motion to Quash Subpoenas, as well as in some of the deposition testimony already taken, informal conversations and / or communications with Hains' and Dartez, both owners of 24 Hour Safety began in early 2012. *See* R. Docs. 60, 65, 66. Counsel for Total Safety also stated that the "more serious" discussions about Rowland moving over to 24 Hour Safety began in May and June of 2013.

Upon further questioning by the Court,  however, Total Safety argued that based on the parties agreed upon protocol, counsel for 24 Hour Safety did not object to there being no date restriction, and therefore the agreement signed between the parties should be binding as to whether or not there would a date restriction on the discoverable information. Total Safety also informed the undersigned that this issue had been discussed in the presiding District Judge's hearing on the parties second temporary restraining order ("TRO"), which occurred on October 28, 2013. *See e.g.,* R. Doc. 30, 57.

Upon limited review of the transcript from the second TRO hearing, during oral argument, the undersigned noticed that the presiding District Judge Ivan B. Lemelle, also stated his concerns regarding the scope of the search of the home and business computers, as well as emails of the identified key players in this action. In the transcript, Judge Lemelle, in response to counsel for 24 Hour Safety's question regarding Total Safety's ability "to search all the emails and home and business computers of all the individuals," indicated that he believed "it should be limited . . .  and

15

not something that goes over bounds for the purposes of . . . the hearing." *See* R. Doc. 57, p. 31-32. Thus, the undersigned recognized that even the presiding district judge believed that there should be some date limitation so as to prevent a wide open, unlimited examination, in an effort to protect the parties from conducting discovery which would likely produce irrelevant and or immaterial information to the instant action.

Furthermore, upon questioning by the Court, Total Safety could not point to any specific evidence or any specific date, other than "early 2012" which it would have identified as the first date which Rowland and 24 Hour Safety began informal communications regarding an employment change. Instead, Total Safety contended that they did not want a date limitation as to the files identified by the search terms so that they could find all files, even those which they contend may have been altered by date by Rowland before any negotiations began. The Court however was unpersuaded by this argument.

Therefore, the Court questioned counsel for Rowland as to when any preliminary negotiations began,  and he stated that the "real discussions began in June or July of 2013." However, he also indicated in response to the Court's question as to if any questions occurred before, that "nothing more than informal . . ." which the Court interpreted as a concession that some communications, may have begun in 2012. Furthermore, counsel for Total Safety stated that they had seen text messages sometime in 2012 between Rowland and Dartez and / or Hains. Neither side however could pinpoint a month or date in 2012 within which the discussions began. Therefore, the Court found that it would limit the date restriction on the discovery material. As such, Total Safety's request was granted, but the scope of the production is limited to the period of January 2012 to October 2013.

#### D.    Privilege Logs and Descriptions

Total Safety contends that Rowland and 24 Hour Safety failed to produce logs for each production. *See* R. Doc. 103-1, p. 13. Total Safety also contends that as for the two logs that were produced by Rowland and 24 Hour Safety, the logs that were produced contain inadequate descriptions regarding the basis for the claimed privilege, and thus should be supplemented. *Id.*

##### 1.    Privilege Logs Not Provided

Total Safety contends that Paragraph 8 of the Protocol states that, "[f]or all documents withheld, the privilege log must include (at a minimum): 1) unique identification number; 2) the date of the document; 3) the parties to any communications; 4) a brief description of the subject matter of the document; and 5) the reason the document was withheld." *See* R. Doc. 103-1, p. 13-14; citing R. Doc. 31-1, pp. 27-29, ¶8.

As such, Total Safety contends that it requested privilege logs multiple times, but that as of yet, 24 Hour Safety has failed to produce them for the files withheld from Hains's, Dartez's, Justin's, and Bercegeay's computers and devices. *Id.* at p. 14. Thus, Total Safety contends that 24 Hour Safety has failed to comply with the Protocol. Thus, Total Safety seeks an Order from this Court compelling 24 Hour Safety to produce all outstanding privilege logs. *Id.*

During oral argument, counsel for 24 Hour Safety contended that it had not produced these files because of the previously referred to date restriction of July 1, 2013. However, he conceded that based on the Court's ruling as to the January 1, 2012 date, he would review the data and files withheld from Hains's, Dartez's, Justin's, and Bercegeay's computers and devices, and provide Total Safety with all data that is not subject to a privilege. As to any data and or files within which a privilege is claimed, the Court ordered that a privilege log, with an adequate description of the

17

document over which the privilege is being claimed be provided to Total Safety in order for them to ascertain whether any privileges apply to a particular document and or file in question. As such, Total Safety's request was granted. 24 Hour Safety has **no later than fifteen (15) days** from oral argument, **or by May 8, 2014,** to produce the documents and the privilege logs associated therewith.

### 2.      Inadequate Privilege Descriptions

Total Safety contends that Paragraph 8 of the protocol states that, "[i]f Plaintiff objects to a privilege designation, then the parties agree that the court can inspect the documents in camera and decide whether the document should be produced." *See* R. Doc. 103-1, p. 14. However, Total Safety cannot determine whether to object based on the descriptions in the two privilege logs that Rowland and 24 Hour Safety provided, as the descriptions contain no information for Total Safety or the Court to determine whether the claimed privilege actually protects the file from disclosure. *Id.*

For example, Total Safety contends that one of Rowland and 24 Hour Safety's most recent log contains descriptions, such as "E-mail string containing attorney-client privileged communication and sent in defense of pending litigation." *Id.* Total Safety contends that these descriptions have been routinely found by this Court to be insufficient, citing *Talyor Energy Co., LILAC. v. Underwriters at Lloyd's London Subscribing*, No. 09-6383, 2010 WL 3952208, *2 (E.D. La. Oct. 7, 2010)("Here, the Court finds that the Second Amended Privilege Log does not set forth facts that suffice to establish that each element of the privilege claimed is applicable. Document descriptions such as 'Email forwarding attorney client communication,' 'Email regarding attorney input and advice regarding anticipated litigation issues,' and 'Email forwarding attorney report' fail to set forth adequate facts for this Court—and for plaintiff—to determine whether the claimed privilege protects the document from disclosure."). *Id.* at p. 14-15.

Total Safety contends that it raised this issue to counsel for both Rowland and 24 Hour Safety on February 3, 2014, but that as of yet, neither counselors have indicated whether they intend on amending these logs or provide more sufficient descriptions in their outstanding logs. Therefore, Total Safety seeks an Order from this Court compelling them to amend their current logs by providing sufficient descriptions to determine whether the claimed privilege protects the files from disclosure. *Id.*

In opposition, Rowland contends that the only issue in Total Safety's motion applicable to him is the sufficiency of one of the privilege logs. *See* R. Doc. 119. Specifically, Rowland contends that there is no issue with the privilege logs submitted on his behalf, as the Protocol only required a "brief" description of the privileged nature of the document. *See id.,* at p. 3. Furthermore, Rowland contends that the one case that Total Safety sites in support of its argument that the privilege logs are insufficient does not apply to post-litigation documents, as does this log. *Id.* at p. 3-4.

Specifically, Rowland contends that some courts across the country have determined that the requirements for privilege logs describing post-litigation documents and communications are different than those for pre-litigation documents and communications. *Id.* In fact, Rowland contends that some courts have suggested that privilege logs are not required for post-litigation documents and communications. *Id.* citing  *U.S. v. Bouchard Transp.*, 2010 U.S. Dist. LEXIS 37438, at *2 (E.D.N.Y. 2010) ("Privilege logs are commonly limited to documents created before the date litigation was initiated….[because] it can be assumed that all documents created after…a lawsuit has been filed and withheld on the grounds of privilege were created because of the pending litigation."); *Prism Technologies, LLC v. Adobe Sys., Inc*., 2011 U.S. Dist. LEXIS 131321 (D. Neb. 2011) (same); *Ryan Inv. Corp. v. Pedregal De Cabo San Lucas*, 2009 U.S. Dist. LEXIS 118337, at

*9 (N.D. Cal. 2009) (denying plaintiff's motion to compel "to the extent it seeks to require a log of post-litigation counsel communications and work product….").

During oral argument, the Court reviewed the privilege log, and indicated that based on the brief descriptions, the log was unsatisfactory, as the descriptions did not provide enough of an explanation as to the content of the material over which the claim is being asserted. Therefore, counsel for Rowland was required to amend the privilege log to provide a better description of those documents on which privileges are being claimed so that Total Safety may be able to ascertain whether the privilege applies. As such, Total Safety's request to amend the logs was granted.

**IV.**   <u>**Conclusion**</u>

**IT IS ORDERED** that Plaintiff, Total Safety U.S., Inc.'s ("Total Safety") **Plaintiff's Second Motion to Compel Compliance with the Protocol (R. Doc. 103)** is **GRANTED** as set forth below:

**IT IS GRANTED** as to Total Safety's request to image Hains's iPhone and Dartez's iPhone.

**IT IS FURTHER GRANTED** as to Total Safety's request for 24 Hour Safety to produce files which were withheld based on relevance and date restriction. However, Total Safety's request as to those files is limited from January 1, 2012, to the October 2013 date already designated by the parties, **no later than fifteen (15) days** from the oral argument on this motion, or by **May 8, 2014**.

**IT IS FURTHER GRANTED** as to Total Safety's request for Rowland and 24 Hour Safety to amend the current privilege logs and produce logs which have yet to be produced, to provide adequate descriptions of the files over which a privilege is being claims **no later than fifteen (15) days** from the oral argument on this motion, or **by May 8, 2014**.

New Orleans, Louisiana, this 29th day of April 2014

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TOTAL SAFETY U.S., INC. | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 13-6109 |
| versus | § | |
| | § | JUDGE IVAN L.R. LEMELLE |
| GARY ROWLAND AND 24 HR | § | |
| SAFETY, LLC, | § | SECTION B |
| Defendant. | § | |

## DECLARATION OF GREGORY CANCILLA

1.    My name is Gregory Cancilla, and I am of the full age of majority, competent to testify under oath, and make the statements herein based upon my personal knowledge.

2.    I am the Director of Forensics for RVM, Inc., which was hired by counsel for Total Safety U.S., Inc., to conduct forensic examinations in this litigation according to a Protocol that was provided to RVM.

3.    Counsel for Total Safety informed me that this Court has requested assurances regarding RVM's ability to collect a usable image of Amy Hains's iPhone.

4.    If allowed to conduct the examination, RVM engineers will be able to confirm, on site, whether a usable image can be extracted from the iPhone.

5.    Unlike the first attempt, RVM's forensic engineers will perform the full analysis on site, rather than completing the analysis at RVM's laboratory in New York.

This will allow RVM's forensic engineers to not only extract an image from the iPhone but also confirm whether the image can be analyzed or is corrupt.

6.      RVM's engineers will use a Cellubrite UFED Touch Device—a tool that the FBI uses—to extract an image of Ms. Hains's iPhone.

7.      RVM's engineers will also have a similar tool (manufactured by a different company Oxygen) to also extract an image of the iPhone in case the Cellubrite tool cannot extract a usable image.

8.      RVM's engineers will also bring a laptop with the software—Physical Analyzer—that RVM utilizes to analyze the image extracted by the tools. Specifically, after RVM's engineers collect an image on the tools, they will connect the tools to the laptop, using a dongle, and run the Physical Analyzer software to analyze the images collected on the tools.

9.      This software will allow the RVM's engineers to confirm whether a usable image has been extracted.

10.     If the software confirms that a usable image cannot be extracted, RVM's engineers will then examine the iPhone itself to analyze whether there are certain settings or applications that are prohibiting a usable image from being collected.

11.     RVM's engineers will not need to re-image Ms. Hains's iPhone to determine whether a usable image can be collected or whether RVM's engineers indeed collected a usable image.

12.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

{N2771541.1}

Executed on April 23, 2014.

Gregory Cancilla

{N2771541.1}