UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TOTAL SAFETY U.S., INC. | CIVIL ACTION |
| VERSUS | NO:   13-6109 |
| GARY ROWLAND, ET AL. | SECTION: "B" (4) |

ORDER

Before the Court is Defendant, Gary Rowland's ("Rowland") **Motion to Quash Deposition of Defense Counsel of Record Kindall James (R. Doc. 181)**. *See* R. Doc. 181. The motion is opposed. *See* R. Doc. 182. A reply was also filed. *See* R. Doc. 194. It was heard by oral argument on May 28, 2014.

I.   **Background**

This case arises from Defendant Gary Rowland's ("Rowland") decision to leave his employment with Plaintiff, Total Safety ("Total Safety") for that of 24 Hour Safety in October of 2013. *See* R. Doc. 1, p. 1. Rowland resigned on October 6, 2013, and Total Safety initiated this suit four days later, asserting a single claim for breach of an employment agreement and seeking injunctive relief restraining Rowland from working for 24 Hour Safety in certain regards. *Id.* at 10-13.[1] On October 23, 2013, Total Safety filed an amended complaint adding 24 Hour Safety as a defendant and asserted claims for (i) Breach of Employment Agreement, (ii) Misappropriation of

---

[1]A full factual background is included in the undersigned's Order and Reasons, dated April 29, 2014, at Rec. Doc. No. 174.

Confidential Information and Trade Secrets, (iii) Unfair Trade Practices, (iv) Conversion, (v) Breach of Fiduciary Duty, (vi) Conspiracy, (vii) Violation of the Computer Fraud and Abuse Act, and (viii) Violation of the Federal Stored Communications Act. *Id.* The Amended Complaint was also accompanied by a Motion for renewed and expanded injunctive relief restricting Rowland from competing in any way with Total Safety. *See* R. Doc. 19.

As to the instant motion, Defendant Rowland seeks an Order from this Court quashing the deposition of his counsel of record, Kindall James, noticed by Total Safety on April 28, 2014. *See* R. Doc. 181-2, p. 2. Rowland argues that Kindall James ("James") is an integral part of his defense team, as she has been enrolled as defense counsel of record since the inception of this litigation. *See* R. Doc. 181-1, p. 1. As such, Rowland contends that she should not be deposed by Total Safety, as she has interviewed witnesses, developed defense strategy, filed numerous pleadings, participated in the preliminary injunction hearing and will participate in the trial of this case. *Id.*

## II.   Standard of Review

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v.*

*American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.* at 26(b)(2)(C)(iii).

The decision to enter a protective order is within the Court's discretion. *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 482 (10th Cir. 1995). Federal Rule of Civil Procedure 26(c) governs the issuance of protective orders. It provides in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending-or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

Fed.R.Civ.P. 26(c)(1).

Rule 26(c), however, contains a requirement that good cause be shown to support the issuance of a protective order, providing that "the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir.1998); *see also Baggs v. Highland Towing, L.L.C.*,No., No. 99-1318, 1999 U.S. Dist. LEXIS 11450, at *6-7, 1999 WL 539459, at *2 (E.D. La. July 22, 1999) (Rule 26(c)(2) orders may be issued only when the

moving party makes "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.").

Rule 45 governs the issuance of subpoenas, and provides that on timely motion, the issuing court must quash or modify a subpoena if it requires disclosure of privileged or other protected matter, or otherwise subjects the subpoenaed person to undue burden. *See* Fed.R.Civ.P. 45(c)(3). "In general, the burden of demonstrating the applicability of the privilege rests on the party who invokes it." *Premier Dealer Servs., Inc. v. Duhon*, No.12-1498, 2013 WL 5720354 (E.D. La. Oct. 21, 2013); citing *Nat'l West. Life Ins. Co. v. West. Nat. Life Ins. Co.*, 2010 WL 5174366, at *2 (W.D.Tex.Dec. 13, 2010); 9A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2463.1 (3d ed.2008); *Hodges, Grant & Kaufmann v. U.S. Government, Dept. of the Treasury*, 768 F.2d 719, 721 (5th Cir.1985). Under Rule 45, a Court must quash or modify a subpoena that fails to allow a reasonable time to comply, requires the disclosure of privileged or protected matters, or subjects a person to an undue burden. *See* Fed.R.Civ.P. 45(c)(3)(A)(i), (iii) & (iv).

### III.     Analysis

Rowland argues that Kindall James ("James") is an integral part of his defense team, as she has been enrolled as defense counsel of record since the inception of this litigation. *See* R. Doc. 181-1, p. 1. As such, Rowland contends that she should not be deposed by Total Safety, as she has interviewed witnesses, developed defense strategy, filed numerous pleadings, participated in the preliminary injunction hearing and will participate in the trial of this case. *Id.*

Furthermore, Rowland contends that James had one brief phone conversation with him in September 2013, at a time when she was representing now co-defendant, 24 Hr. Safety, LLC., ("24 Hr.") who was then a non-party in the process of hiring Rowland. *Id.* at 2. Rowland contends that

Total Safety's purported justification for deposing James is that she allegedly told Rowland her legal opinion about a contract referred to in this litigation as the 2011 W3 Agreement (or the Unit Award Agreement), which is not the employment agreement under which Total Safety sued Rowland in this action. *Id.* Rowland contends that the employment agreement at the center of this action involves non-compete agreements from a November 2005 contract Rowland entered into with Total Safety.

Rowland also contends that the 2011 W3 Agreement is not enforceable, as the presiding District Judge stated during the parties TRO hearing, that "the Court has grave doubts that the restrictive covenants in the [2011 W3] Agreement are enforceable under Louisiana law." *Id.* at p. 5; citing R. Doc. 116, at p. 11-14. Therefore, Rowland contends that the Court's reasoning helps establish that James's communication with Rowland concerning the 2011 W3 Agreement is not relevant or crucial to this litigation, such that it would necessitate the taking of her deposition. As such, Rowland contends that Total Safety cannot satisfy its burden of proof of the extraordinary circumstances necessary to justify deposing James. Thus, Rowland seeks a protective order from this Court quashing the deposition notice of Rowland's counsel, James.

In opposition, Total Safety contends that Rowland's conversations with James occurred before she had any attorney-client relationship with him, and involved more than the 2011 W3 agreement's non-compete clauses. *See* R. Doc. 182. Total Safety contends that James also served as a recruiter for now co-defendant 24 Hour Safety, and had multiple conversations with Rowland on its behalf before the inception of this litigation. *Id.* at p. 1.

Furthermore, Total Safety contends that in August 2013 James "made herself a fact witness" in this matter when she gave Rowland advice on whether or not leaving Total Safety to join 24 Hour Safety would violate the restrictive covenants in the 2011 W3 Unit Award Agreement. *Id.* at 2.

Specifically, Total Safety contends that in late 2011, when Rowland agreed to become a member and receive equity shares in Total Safety's parent company W3 Holdings, LLC., he entered into the 2011 W3 agreement, which had restrictive covenants that supplemented the previous restrictive covenants in his 2005 Employment Agreement with Total Safety. *Id.* at n. 4; citing R. Doc. 117, ¶ 34. When Rowland was considering whether to leave Total Safety in August 2013, Total Safety contends that 24 Hour Safety "hired [James] for advice for 'ways to work around' the Unit Award Agreement." *Id.* at 3.

Total Safety contends that James was sent the Unit Award Agreement and the highly confidential operating agreement for W3 Holdings, LLC., for which she allegedly prepared a memorandum detailing the activities Rowland could perform for 24 Hour Safety without violating the agreement's restrictive covenants. *Id.* at 3, n. 7. Total Safety contends that around this time Amy Hains, co-owner of 24 Hour Safety, allegedly set up a conference for Rowland and James to speak about the memorandum and resolve any of his doubts about leaving Total Safety. *Id.*

On September 16, 2013, Total Safety contends that Rowland was given James's contact information, and that following this, Rowland confirmed that he spoke with James "two or three times" on this issue before an attorney-client relationship was ever established between he and James. *Id.* Furthermore, Total Safety contends that Hains's testified in her deposition that James's discussed restrictive covenants in the Unit Award Agreement with Rowland and informed him that he could uphold his contract with Total Safety and still work for 24 Hour Safety. *Id.* at 4. Thus, Total Safety contends that Rowland relied on James's advice to leave 24 Hour Safety, prior to the establishment of any attorney-client relationship in this matter, and thus is subject to being deposed.

As such, Total Safety contends that James is the only person with the relevant information

as to the advice she gave Rowland regarding the W3 Unit Award Agreement; her discussions with Rowland are relevant and non-privileged as there was not an attorney-client relationship with Rowland at the time the conversations took place; and the information regarding these discussions are crucial to Total Safety's case preparation. *Id.* at 7-10.Therefore, Total Safety contends that she made herself a fact witness, and because Rowland testified that he was unable to remember any specifics about the conversation he had with James, Total Safety should be allowed to depose James so that it may learn whether Rowland disclosed to her any plan he had to steal confidential communications from it, whether they discussed Total Safety's customers or proprietary information; whether they discussed activities Rowland was contractually prohibited from performing; whether they discussed the relationship Total Safety had with its parent company,W3 Holdings; whether they discussed Rowland's membership and equity in W3; whether they discussed Rowland's ability to recruit Total Safety's employees and why Rowland and Hains's testified of the validity of the restrictive covenants in the Unit Award Agreement. *Id.* at 1, 4-5.

In response, Rowland filed a reply memorandum into the record and contends that James' testimony is not necessary, as he did not rely on his conversation with James alone to determine whether or not to leave Total Safety. *See* R. Doc. 194-1, p. 2. Specifically, counsel for Rowland argues that Rowland did not testify that he relied on James's opinion, but rather, that he relied on the final letter from Amy Hains, which allegedly indicated that he was "good to go" over to 24 Hour Safety. *Id.* citing R. Doc. 194-2, p. 20. Rowland also contends that James's legal opinions concerning the restrictive covenants in the 2011 W3 Agreement are neither relevant nor crucial to the instant action, as this agreement was not the one for which Total Safety brought suit against Rowland for violating in the first place. Lastly, Rowland contends that the information which Total

Safety seeks to depose James for is highly protected "opinion work product" which is protected by the work product doctrine and is thus, not discoverable. *See* R. Doc. 194-1, p. 14; citing *Ingraham v. Planet Beach Franchising Corp.,* No. 07-3555, 2009 WL 1076717 (E.D. La. Apr. 17, 2009).

"While the Federal Rules of Civil Procedure do not specifically prohibit the taking of an opposing counsel's deposition in a case, the Fifth Circuit has found that 'depositions of opposing counsel are disfavored generally' and 'should be permitted in only limited circumstances.'" *Nat'l W. Life Ins. Co. v. W. Nat. Life Ins. Co.*, No. A-09-CA-711LY, 2010 WL 5174366 (W.D. Tex. Dec. 13, 2010) at*3; citing *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 (5th Cir.1999); *see Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir.1999) (noting that "federal courts have disfavored the practice of taking the deposition of a party's attorney; instead, the practice should be employed only in limited circumstances."), *cert denied*, 529 U.S. 1129 (2000); *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir.1986) ("Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation").

In *Nguyen*, the Fifth Circuit applied the three-part test established by the Eighth Circuit in *Shelton*, to determine when opposing counsel should be permitted to be deposed in a case. In order to depose opposing counsel, the party seeking to take the deposition must show that (1) no other means exist to obtain the information than to depose the opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case. *Id.* at 209 (citing *Shelton*, 805 F.2d at 1327).

Here, the Court finds that all of the factors weigh in favor of permitting the deposition of

James. First, during the deposition of Rowland, counsel for Total Safety attempted to obtain information from Rowland about the discussions he had with James. *See* R. Doc. 182, p. 4-5. Although Rowland did testify that he and James discussed his "options" he testified that he did not remember all the details or questions he had during the conversation, or if they had discussed the restrictive covenants. He also testified that he did not want to speculate exactly what he and James discussed. *See* R. Doc. 182-1, p. 8-9; R. Doc. 194-2, p. 17.

Furthermore, when asked by counsel for Total Safety whether Rowland would "rely on whatever James [says that you] discussed," Rowland testified that he was "fine with that." *See* R. Doc. 182-1, p. 9; R. Doc. 194-2, p. 19. As such, the Court finds that because Rowland could not confirm all the details surrounding his conversation with James, no other reasonable means exists to obtain this information. Thus James's deposition is necessary.

Second, the Court finds that James's advice and / or conversations regarding the W3 Holdings agreement are highly relevant and crucial to the instant action even though it may not have been the agreement upon which Total Safety initially brought suit against Rowland. The 2011 W3 Agreement and the "options" which Rowland discussed with James are relevant to this action, as they center around Rowland's decision to terminate his employment with his former employer, Total Safety, and join its competitor, 24 Hour Safety, which is the subject matter of this dispute.

Third, at the time that Rowland had conversations with James, he was not James's client. In fact, he was still employed with James's client – 24 Hour Safety's business competitor – Total Safety and had no relationship to 24 Hour Safety or James. Furthermore, litigation had not yet ensued between the parties when James and Rowland communicated in September 2013, after she allegedly drafted an opinion on the 2011 W3 Holdings Agreement, at the direction of her client, 24

Hour Safety, but before he terminated his employment with Total Safety. No attorney client relationship was ever formed between Rowland and James before the inception of this action, which is not disputed by the parties.

Therefore the Court finds that James's conversations with Rowland are not opinion work product, because Rowland was not yet an employee of 24 Hour Safety, nor was he represented by James. *See e.g., S.E.C. v. Brady,* 238 F.R.D. 429, 442 (N.D. Tex. 2006)(where the Court stated that "[e]xamples of opinion work product include notes and memoranda created by an attorney or his agent, regarding witness interviews . . ." which is different from Rowland's conversations with James, as no attorney-client relationship existed between the two parties). As such, the Court finds that the conversations between Rowland and James are not protected and are discoverable.

### IV. Conclusion

**IT IS ORDERED** that Defendant, Gary Rowland's **Motion to Quash Deposition of Defense Counsel of Record Kindall James (R. Doc. 181)** is **DENIED**.

New Orleans, Louisiana, this 17th day of June 2014.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**