UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TOTAL SAFETY                              CIVIL ACTION

VERSUS                                    NO. 13-6109

GARY ROWLAND                              SECTION "B"(4)
AND 24HR SAFETY

ORDER AND REASONS

**Nature of the Motions and Relief Sought**

The following motions are before the Court: Motion to Dismiss Six Counterclaims (Rec. Doc. No. 143) filed by Total Safety; and Motion for Partial Summary Judgment (Rec. Doc. No. 281) filed by Total Safety. Defendant, Gary Rowland has opposed the motions. (Rec. Docs. No. 149, 304). Plaintiff has filed reply memoranda on both motions. (Rec. Docs. No. 167, 309). The motions, set for submission on April 23, 2014 and October 15, 2014, respectively, are before the Court on the briefs without oral argument. Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Dismiss (Rec. Doc. No. 143) is **GRANTED** in part and **DENIED** in part. **IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Rec. Doc. No. 281) is **GRANTED** in part and **DENIED** in part.

**Brief Statement of Facts and Procedural History**

On October 10, 2013, Total Safety filed an action against former employee, Gary Rowland ("Rowland"), for breach of an employment agreement. (Rec. Doc. No. 1). The action arose out of Rowland's decision to resign from Total Safety on October 6, 2013, and immediately join business competitor, 24HR Safety. In November of 2005, Total Safety and Rowland entered into an employment agreement containing restrictive covenants and that automatically renewed every year after an initial two-year term. These restrictive covenants generally prohibited Rowland from disclosing confidential information, from soliciting employee(s) to leave the employ, and from rendering service to or working for competitors, within certain geographic designations, and for a "Non-compete Period" of twelve (12) months after leaving the company's employ.

On October 23, 2013, Total Safety filed a First Amended Complaint ("FAC") to include 24HR Safety. (Rec. Doc. No. 18). In the FAC, Total Safety asserted claims for **(1)** breach of contract, **(2)** misappropriation of confidential information and trade secrets, **(3)** unfair trade practices, **(4)** conversion, **(5)** breach of fiduciary duty, **(6)** conspiracy, **(7)** violation of computer fraud and abuse act, **(8)** violation of the Federal Stored Communications Act. (Rec. Doc. No. 18). Total Safety

seeks injunctive relief to prohibit Rowland from competing, and soliciting customers for two (2) years, monetary damages against Rowland, and injunctive relief ordering Rowland to return all stolen property. (Rec. Doc. No. 7).

On December 31, 2014, Rowland filed an answer to the FAC, and asserted counterclaims for **(1)** unfair trade practices, **(2)** failure to pay wages in violation of *La. Rev. Stat.* § 23:631, and **(3)** conversion. (Rec. Doc. No. 87). Rowland seeks monetary damages. (Rec. Doc. No. 87 at 33). Total Safety filed a reply (Rec. Doc. No. 146). 24HR Safety also filed an answer to the FAC. (Rec. Doc. No. 91).

On February 26, 2014, Total Safety was granted leave to file a Second Amended Complaint ("SAC"), adding claims for specific performance against 24HR Safety and new grounds for breach of contract as to Rowland. (Rec. Doc. No. 97). The SAC alleges that Rowland breached a separate 2011 "Unit Award Agreement," which he entered into with non-party W3 Holdings, a Delaware entity that acquired Total Safety at around the same time. (Rec. Doc. No. 97 at 11, 39-40). Rowland filed an answer, and added counterclaims for **(1)** wrongful issuance of a TRO, **(2)** intentional interference with contract, **(3)** abuse of process, and **(4)** abuse of rights. (Rec. Doc. No. 128).

On March 31, 2014, Total Safety filed a Motion to Dismiss [Six Counterclaims] for Failure to State a Claim (Rec. Doc. No. 143) as to Rowland's Second Amended Counterclaim. Rowland filed a response (Rec. Doc. No. 149), and Total Safety filed a reply (Rec. Doc. No. 167). On September 11, 2014, Total Safety filed a Motion for Partial Summary Judgment against Rowland. (Rec. Doc. No. 281). Rowland filed an opposition (Rec. Doc. No. 304), and Total Safety filed a reply (Rec. Doc. No. 309).

The Court now reviews contentions, alleged facts, and the law concerning Total Safety's motions to dismiss and for partial summary judgment.

**Law and Analysis**

I.   *Motion to Dismiss Counterclaims under FRCP 12(b)(6)*

A district court may not dismiss a complaint under Fed. R. Civ. P. 12(b)(6), unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Blackburn v. Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the original complaint must be taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1980).

However, a motion to dismiss under Rule 12(b)(6) operates to test the sufficiency of the complaint. **(1)** The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* at 1949 (*citing Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007)). **(2)** After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949.

Total Safety contends that the following six counterclaims asserted by Rowland fail to state a legally cognizable claim: (A) intentional interference with contract; (B) unfair trade practices; (C) conversion; (D) wrongful issuance of a temporary restraining order; (E) abuse of process; and (F) abuse of rights.

## A. Intentional Interference with Contract

Rowland alleges that Total Safety, "in attempting to enforce the restrictive covenants in the 2011 W3 Agreement and the non-compete provision in Rowland's 2005 Employment Agreement beyond its terms, has acted in contravention of its duty not to engage in an illegal restraint of trade, and has therefore

5

intentionally and unlawfully interfered with Rowland's employment relationship with 24HR Safety" under Louisiana law. (SAC, Rec. Doc. No. 128 at 45).

Louisiana recognizes an extremely limited cause of action for intentional interference with a contract. *Petrohawk Properties, L.P. v. Chesapeake Louisiana*, *L.P.,* 689 F.3d 380, 394 (5th Cir. 2012)(*citing 9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228, 232-34 (La. 1989)). In *9 to 5 Fashions*, the court recognized "only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person." *Id.* at 234. The foregoing duty arises out of a corporate officer's duty to those with whom his corporation contracts. *Id.* at 395; *see also American Waste & Pollution Control Co. v. Browning-Ferris, Inc.,* 949 F.2d 1384, 1385 (5th Cir. 1992).

The Louisiana Supreme Court has not directly addressed the scope of this cause of action since the decision in *9 to 5 Fashions*. The Louisiana courts of appeal have conformed to the limited cause of action expressed in *9 to 5*. *See e.g. Brown v. Romero*, 922 So.2d 742, 747 (La. Ct. App. 2006); *Tallo v. Stroh Brewery Co.,* 544 So.2d 452, 453-55 (La. Ct. App. 1989). In *Technical Control Systems, Inc. v. Green*, the plaintiff urged the state appellate court to expand upon this cause of action

against a corporate entity defendant. 809 So.2d 1204, 1207 (La. Ct. App. 2002), *writ denied*, 817 So.2d 100 (La. 2002). The court concluded that, because "recent attempts by this court to expand upon this [cause of action] have been reversed by our supreme court," the court "must assume that [its] expansive take on tortious interference with contract claim did not meet the approval of the supreme court." *Id*. at 1208-09 (*citing Cowen v. Steiner*, 689 So.2d 516 (La. Ct. App. 1997)).

In a decision that followed *9 to 5 Fashions*, the Louisiana Supreme Court, in deciding a res judicata issue, implicitly held that an action for unlawful interference with the right to do "business" can be founded on an obligation not to enforce an illegal non-competition agreement against former employees. *Preis v. Standard Coffee Service Co.,* 545 So.2d 1010, 1013 (La. 1989). In *Gearheard v. De Puy Orthopaedics, Inc.*, this Court interpreted this as providing a basis for a cause of action for intentional interference of contractual relations premised on the foregoing conduct. No. Civ. A. 99-1091, 2000 WL 533352, at *5-7 (E.D. La. 2000)(stating that the "lost business and lost profits" in *Preis* "sounds like a claim of interference with contractual relations").

This Court previously failed to distinguish between 'tortious interference with the right to do business,' and the

7

'tortious interference with contract' asserted here. *Id.* Although both causes of action derive from the same general tort law, Louisiana Civil Code article 2315, the two are based on different principles and the former requires a showing of "improper influence" and "malice." *St. Landry Homestead Federal Sav. Bank v. Vidrine*, 118 So. 3d 470, 490 (La. App. 3 Cir. 6/12/13)(declining to extend *9 to 5 Fashions* to counterclaim of tortious interference with contract asserted against a bank but finding a claim for tortious interference with a business relationship). In light of this, this Court now declines to adopt the foregoing rationale previously provided in *Gearheard*.

More recently, federal courts have taken a circumscribed approach to the cause of action. *See e.g. Petrohawk Properties, L.P. v. Chesapeake La., L.P., 689 F.3d* at *396* (refusing to certify a question to the Louisiana Supreme Court because *Spurney* [*9 to 5 Fashions*] is "a controlling opinion on the scope of the action for tortious interference with a contract"); *Boudreaux v. OS Restaurant Services, LLC*, No. 14-1169, 2014 WL 4930475 (E.D. La. Sept. 30, 2014)(declining to recognize the cause of action beyond a 'corporate office'); *Mountain States Pipe & Supply Co. v. City of New Roads, La.*, No. 12-2146, 2013 WL 3199724 (E.D. La. June 21, 2013)(declining to extend the cause of action to a contracting company); *M & D Mineral*

*Consultants LLC v. Wenting li, et al.*, No. 12-2082, 2013 WL 883689 (W.D. La. Mar. 7, 2013) (finding no tortious interference with contract claim could be asserted against manager of a limited liability company).

In sum, the Louisiana Supreme Court has recognized a cause of action for intentional interference with contractual relations only "against a corporate officer." *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d at 234. Under the *Erie Doctrine*, this federal Court sitting in diversity must apply state substantive law as stated in the final decisions of the state's highest court. *Baker v. RR Brink Locking Systems, Inc.*, 721 F.3d 716, 717 (5th Cir. 2013). <u>In light of the jurisprudence that followed the *9 to 5 Fashions* decision, both at the state and at the federal level, the Court, under *Erie*, finds that the Louisiana Supreme Court would not recognize the instant claim against a corporate entity, and grants the 12(b)(6) motion to dismiss the counterclaim for intentional interference with contract</u>.

### B. Unfair Trade Practices

Total Safety has moved to dismiss Rowland's claims under the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), La. Rev. Stat. 51:1401, *et seq*. LUTPA § 51:1409 provides that, "Any person who suffers <u>any ascertainable loss of money or movable property</u>...as a result of the use or employment

by another person of an unfair or deceptive method, act or practice declared unlawful by § 51:1405 may bring an action...." Section 1405(A) to which § 1409 refers, states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Private parties have a right of action under LUTPA. *Felder's Collision Parts, Inc. v. General Motors Co.,* 960 F.Supp. 2d 617, 638 (M.D. La. 2013)(*citing Cheramie Services, Inc. v. Shell Deepwater Production, Inc.*, 35 So.3d 1053, 1060 (La. 4/23/10)). The Louisiana Supreme Court has held that this right of action "extends to all persons who assert <u>loss of money or property</u> as a result of another's unfair or deceptive trade practices." *Cheramie,* 35 So.3d at 1060.

Louisiana has left the determination of what is an "unfair trade practice" largely to the courts to decide on a case-by-case basis. *Id*. However, cases have defined the range of prohibited practices narrowly. *Id*. A practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous or substantially injurious. *Id*. A trade practice is "deceptive" for purposes of LUTPA when it amounts to fraud, deceit, or misrepresentation. *Tubos de Acero de Mexico, S.A. v. American Intern. Inv. Corp., Inc*., 292

F.3d 471, 480 (5th Cir. 2002); *Mixon v. Iberia Surgical, LLC*, 956 So.2d 76, 79 (La. App. 3 Cir. 4/18/07).

Rowland contends that Total Safety violated LUTPA in three ways: (1) by offering to drop its claims against Rowland if he returned to his employment with Total Safety while criticizing 24HR Safety in court pleadings for continuing to employ him; (2) by threatening him with the possibility of injunctive relief that would prevent him, for a two-year period from "working anywhere, for any competitor"; and (3) by attempting to enforce a non-compete agreement beyond it terms. (Rec. Doc. No. 149 at 4-8).

Assuming, without finding, that the alleged conduct described in (1) was "unethical, deceptive or oppressive," Rowland has not established or described how he could have sustained an 'ascertainable loss of money or property' as a result. Moreover, Rowland is still employed with 24HR Safety, and Rowland is not entitled to have Total Safety relinquish its legal right to sue under the Employment Agreement. *See Video International Production, Inc. v. Warner-Amex Cable Communications, Inc.*, 858 F.2d 1075 (5th Cir. 1989)(discussing the Noerr-Pennington Doctrine beyond the antitrust context); *see also Jones Energy Co. v. Chesapeake Louisiana, L.P.*, 873 F.Supp.2d 779, 788-89 (W.D. La. 2012). Similarly, Rowland has

not generally plead how the foregoing conduct described in (2) could have caused him to suffer an <u>ascertainable loss of money or property</u>.

An aggrieved employee may bring claims for damages under LUTPA as a result of an illegal covenant not to compete. *Gearheard,* 2000 WL 533352, at *8 (E.D. La. 2000); *Preis v. Standard Coffee Serv. Co.,* 545 So.2d at 1013 (finding that an employer's breach of its obligation not to enforce an <u>illegal non-solicitation agreement</u> against an employee is actionable under LUTPA); *see also Landrum v. Board of Comm'rs of the Orleans Levee Dist.*, 685 So.2d 382, 389 n.5 (La. App. 4th Cir. 1996). Rowland claims Total Safety, in seeking an overbroad TRO, sought to enforce the W3 Agreement and the employment agreement's restrictive covenants 'beyond <u>their terms</u>.' Rowland contends that, under *Gearheard* and *Preis,* this states a cognizable claim under LUTPA.

This Court is guided by the Louisiana Supreme Court's decision in *Preis,* which remains intact following amendments to La. Rev. Stat. § 23:921. *Gearheard*, 2000 WL 533352, at *5. However, the precise scope of the holding is unclear. *See Smith v. Coffman*, 87 So.3d 137, (La. App. 2 Cir. 2012)(discussing *Preis* and stating: "the employee's claim did involve an alleged improper enforcement by the employer of a non-solicitation

agreement in an employment contract...In the second suit, the *Preis* court held that the employee's suit based upon LUTPA was barred by res judicata"). In *Coffman*, a jury found for a former employee on a claim of improper enforcement of a non-compete agreement where the employer opened up a shell office in another parish such that the covenant could apply. Given the foregoing, the Court denies the 12(b)(6) motion to dismiss the counterclaim under LUPTA for alleged improper enforcement of a non-solicitation agreement.

### C. Conversion

Rowland contends that Total Safety's actions in "taking the re-purchase price for Rowland's Class A Units (stock), which had a value of at least $91,000, to offset its fees and expenses in connection with this litigation without any award or judgment of damages in its favor constitutes self-help and an unlawful conversion..." (SAC, Rec. Doc. No. 128 at 47-48). The Amended and Restated Limited Liability of W3 Holdings ("LLC Agreement") entitled the Company, W3 Holdings, to re-purchase stock by cancelling indebtedness owed by the Member (Rowland) to the Company (W3 Holdings) or any Subsidiary (Total Safety). (Rec. Doc. No. 143-4 at 10).

1. <u>Applicable Law</u>

Total Safety argues that Delaware law governs this claim because the conversion relates to the LLC Agreement for W3 Holdings, a Delaware company, and the agreement contains a choice of law provision that calls for the application of Delaware law. Rowland argues that Louisiana law applies to the state law claims because the choice of law provision in the agreement is null and void under Louisiana law and because the parties' relationship is centered in Louisiana.[1]

*Contract Claim*

The Court recognizes that the claim for conversion by Rowland is one that is based in contract rather than in tort. The LLC Agreement of W3 Holdings, under which the Class A stock was issued, Section 8.09(b) provides: "The Company may elect to purchase all or any number of the Management Units...(c) The Company may pay for the Management Units to be purchased by it...by...(ii) the cancellation of any indebtedness owed by the Management Member to the Company or any Subsidiary (Total Safety) thereof." (Rec. Doc. No. 143-4 at 10).

The Court notes that Total Safety is not a party to the LLC Agreement; however, Total Safety is a third-party beneficiary to

---

[1] Rowland's Employment Agreement contains a choice of law provision that calls for the application of Texas law.

this agreement, and whether Rowland has a claim for conversion against Total Safety turns on whether W3 Holdings breached the agreement by repurchasing the shares with debt cancellation. Stated differently, if W3 Holdings did not breach the LLC Agreement, there can be no conversion claim against Total Safety. No conversion claim exists outside or beyond the contractual agreement.[2] The Court next turns to the choice of law provision contained in the agreement.

*Choice of Law Provision and Louisiana Law & Public Policy*

Article VIII, Section 13.01 of the LLC Agreement provides that the agreement "shall be construed by, subject to and governed in accordance with the internal laws of the State of Delaware without giving effect to conflict of laws or other principles which may result in the application of laws other than the internal laws of the State of Delaware." A court sitting in diversity must apply the Louisiana approach to conflicts of law. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941). Louisiana recognizes and honors party autonomy with respect to choice of law provisions, however, such contractual stipulations are not honored where "there are legal or 'strong public policy considerations' justifying the refusal

---

[2] Rec. Doc. No. 143-4 at 12-13 Article VII of the LLC Agreement provides: "The parties hereto have voluntarily agreed to define their rights, liabilities and obligations respecting the subject matter of this Agreement exclusively in contract pursuant to the express terms and provisions of this Agreement…"

to honor the contract as written." *NHC Corp. v. Broyles*, 749 F.2d 247, 251 (5th Cir. 1985).

Louisiana Revised Statute § 23:921(A)(2) provides that "[t]he provisions of every employment contract or agreement...by which any foreign or domestic employer or any other person or entity includes a...choice of law clause...shall be null and void except where the...choice of law clause is expressly, knowingly and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action."

Rowland contends that the choice of law provision is null and void under § 23:921(A)(2). Rowland is not an "employee" in the context of the LLC Agreement as he is not an employee of W3 Holdings. The statute has been judicially extended to various relationships which are "essentially" employer/employee. *See McCray v. Cole*, 259 La. 646 (La. 1971)(declaring null and void a non-compete agreement wherein a psychologist, in association with a group of psychiatrists, promised to pay liquidated damages should he withdraw and resume his practice in the same parish); *Nelson v. Associated Branch Pilots of Port Lake Charles*, 63 So.2d 437 (La. App. 1 Cir. 1953)(finding an agreement between members of a pilots' association requiring

withdrawing members to post bond as contrary to the public policy because Association had "control" over the member).

In this case, nothing contained within the LLC Agreement would support a finding that Rowland was "essentially" an employee under its terms. The policy behind the statute is to counteract "the disparity in bargaining power, under which an employee, fearful of losing his means of livelihood, cannot readily refuse to sign an agreement which, if enforceable, amounts to his contracting away his liberty to earn his livelihood." *Winston*, 432 So.2d at 940. Rowland did not have to enter into the agreement to maintain employment with Total Safety; this was an investment decision. W3 Holdings could not and did not exercise control over Rowland and his work. Rowland's employment with Total Safety would not have been affected if he had cashed in his stock or otherwise terminated the agreement.

The Court finds there is insufficient evidence of an analogous employer-employee "disparity" between Rowland and W3 Holdings that would trigger Section 23:921 and invalidate the choice of law provision. *See Kadant Johnson, Inc. v. D'Amico*, No.10-2869, 2012 WL 1605458, at *10 (E.D. La. 2012). The Court next analyses the claim of conversion under Delaware law.

## 2. Delaware Law on Conversion

Conversion is defined under Delaware law as "any distinct act of dominion wrongfully exerted over the property of another, in denial of [the plaintiff's] right, or inconsistent with it." *Leong v. Cellco Partnership*, No. 12-0711, 2013 WL 1209094, at *10 (W.D. La. Mar. 21, 2013)(*citing Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 891 (De. Ch. 2000)). As discussed, this claim is a contract claim. To sue for conversion, Rowland's claim for conversion must be separate factually or legally from a breach of contract claim, i.e. that he had a right to money- other than the right pursuant to the contract- that was violated by W3 and Total Safety's exercise of dominion over the money, or stock in this case. *Kuroda*, 971 A.2d at 889. Rowland does not contend that Total Safety violated an independent legal duty separate from the rights and duties under the agreement.

In sum, Delaware does not recognize a cause of action for conversion where the claim only arises out of rights and obligations established under contract. The counterclaim fails to plead a claim for conversion under Delaware law. For the foregoing reason, the Court grants the 12(b)(6) motion to dismiss the counterclaim for conversion.

### D. Wrongful Issuance of a Temporary Restraining Order (TRO)

Rowland contends that Total Safety sought and was granted on October 28, 2013 a TRO that prohibited him from working for 24HR Safety anywhere in the State of Louisiana, and in Beaumont, Texas. Rowland claims these areas were not restricted by the employment agreement. In December of 2013, the Court issued a subsequent preliminary injunction limited to the areas restricted by the agreement. Rowland contends that he suffered damages as a result of the wrongfully issued TRO. (SAC, Rec. Doc. No. 128 at 43-45).

Louisiana Code of Civil Procedure article 3608 states that "[t]he court may allow damages for the wrongful issuance of a temporary restraining order or preliminary injunction...on a reconventional demand. Attorney's fees...may be included as an element of damages...."

The word "wrongful" simply means incorrect, or the result of a mistake, and does not imply malice or bad faith on the part of the plaintiff. *Arco Oil & Gas Co., a Div. of Atlantic Richfield Co. v. DeShazer*, 728 So.2d 841 (La. 1/20/99); *HCNO Services Inc. v. Secure Computing Systems, Inc.,* 693 So.2d 835 (La. App. 4 Cir. 4/23/97). A TRO is wrongfully issued if it infringes upon some right of the enjoined party regardless of whether or not the injunction was requested on good faith

grounds. *See HCNO Services Inc.,* 693 So.2d at 844. Wrongful issuance of a TRO is injunctive relief that has been issued when it should not have been issued because plaintiff had no right to it. *Id.* A party has been "wrongfully enjoined" under Fed. R. Civ. P. 65(c) if it is ultimately found that the enjoined party had at all times the right to do the enjoined act. *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith*, Inc., 910 F.2d 1049, 1054 (La. App. 2 Cir. 8/8/90). The dissolution of a TRO is prima facie evidence of damage for wrongful issuance thereof. *See HCNO Services Inc.,* 693 So.2d at 844.

The terms and conditions of the 2005 Employment Agreement were limited to 22 Louisiana parishes and four cities in Alabama, Illinois, and Pennsylvania. Total Safety sought and obtained an expanded TRO that prohibited Rowland from working in the state of Louisiana and in Beaumont, Texas. The Court later granted Total Safety a preliminary injunction that reflected the employment agreement. While there was no dissolution of a TRO in this case, the modification lends support to Rowland's assertion. A wrongfully issued TRO would infringe upon Rowland's right to compete beyond the terms of the employment agreement. *See e.g. Diesel Driving Academy, Inc. v. Ferrier*, 563 So.2d 898 (La. App. 2 Cir. 4/4/90).

A claim for wrongful issuance of a TRO is not an attack upon the Court. "The focus of the 'wrongfulness' inquiry is whether, in hindsight in light of the ultimate decision on the merits after a full hearing, the injunction should not have been issued in the first instance. This conclusion is supported by the plain meaning of Rule 65(c) and the theory underlying it, that the applicant 'consents to liability up to the amount of the bond, as the price for the injunction.'" *Blumenthal*, 910 F.2d at 1054. The counterclaim states a claim for damages and attorney fees incurred in defending a wrongfully issued TRO, and therefore, the Court denies the 12(b)(6) motion to dismiss this claim.

### E. Abuse of Process

Rowland contends that Total Safety's actions, in seeking injunctive relief that prohibited Rowland from competing outside the territory restricted by his employment agreement and in enforcing restrictive covenants in the W3 Agreement constituted an abuse of process (SAC, Rec. Doc. No. 128 at 46).[3]

To state a cause of action for the tort of abuse of process, a plaintiff must allege two essential elements: (1) the existence of an ulterior purpose; and (2) a willful act in the

---

[3] The Unit Award Agreement (Class B Units) incorporates by reference Exhibit A, which provides that parallels the non-compete provisions of the 2005 Employment Agreement, and provides W3 Holdings and "any of its affiliates" the right to enforce the Unit Award Agreement and Exhibit A, in the event of a breach .

use of the process not proper in the regular prosecution of the proceeding. *Glotfelty v. Hart*, No. 2013CA0870, 2013 WL 6858285, at *4 (La. App. 1 Cir. 12/27/13). Abuse of process involves the misuse of a process already legally issued whereby a party attempts to obtain a result not proper under the law. *Id*. Thus, the regular use of process does not constitute an abuse of process; there must be a showing of an abuse through an illegal, improper or irregular use of process *Id*. An ulterior motive or a bad intention in using the process is not alone sufficient; the bad intent must have culminated in the abuse. *Weldon v. Republic Bank*, 414 So.2d 1361, 1365 (La. App. 2 Cir. 1982)(*citing* William A. Prosser, *Law of Torts*, Hornbook Series).

Rowland has failed to allege facts to support the second essential element, and this failure is fatal to his claim. <u>A party's intent in invoking the process is not the determinative issue</u>. "Even if a party has an ulterior purpose in making use of some legal process, no cause of action exists unless there has been some abuse." *Grant v. Farm Credit Bank of Texas*, 841 F.Supp. 186, 190 (W.D. La. 1992). "While the existence of an ulterior motive may, perhaps, be inferred from the fact that the process has been misused or misapplied, the reverse is not true." *Weldon*, 414 So.2d at 1366.

Rowland does not allege that Total Safety wrongfully sought a TRO, but simply that Total Safety sought to enforce a TRO beyond the terms of the non-compete provisions with an ulterior motive. Rowland must allege irregular steps in the injunction process taken on the part of Total Safety under the "cover of the process." *See Id.* at 1366. The counterclaim does not allege *how,* in enforcing the restrictive covenants and in seeking an overprotective TRO, Total Safety made irregular use of the injunction process.

It is not alleged that Total Safety misrepresented to the Court the scope of the non-compete provisions or engaged in an act expressly prohibited when seeking a TRO. *Cf. Kohlrautz v. Weber,* 365 Fed.Appx. 54, 56 (9th Cir. 2010)(agreeing that abuse of process took place where party improperly sought a *lis pendens* and TRO to obtain pre-judgment attachment for eventual collection purposes, which is prohibited under law); *Advantor Capital Corp. v. Yeary*, 136 F.3d 1259, 1264 (10th Cir. 1998)(discussing the distinguishing factor as whether the misconduct is merely incidental to some legitimate purpose and finding that because misrepresentation took place during TRO hearing, the jury could find that conduct was not incidental); *see also Cozzi v. Pepsi-Cola General Bottlers, Inc.,* No. 96C72281997 WL 811687, at *3 (N.D. Ill. Dec. 30, 1997)

(declining to dismiss claim for abuse of process where plaintiff alleged coercion following the issuance of TRO).

The Court was aware during the October 28, 2013 TRO hearing that the Employment Agreement was limited to designated areas that did not include Beaumont, Texas, and the remaining Louisiana parishes. Rowland has failed to plead the requisite abuse for an 'abuse of process' claim. <u>For the foregoing reason, the Court grants the 12(b)(6) motion to dismiss this claim.</u>

### F. Abuse of Rights

The doctrine of abuse of rights is invoked sparingly in Louisiana. *Lee v. Pennington*, 830 So.2d 1037, 1043 (La. App. 4 Cir. 10/16/12). The doctrine is a civilian concept applied in limited circumstances because its application renders unenforceable one's otherwise judicially protected rights. *Id.*

### 1. <u>Stock Forfeiture and Repurchase Claims</u>

Rowland contends that under a Unit Award Agreement with W3 Holdings, W3 Holdings repurchased units of Class A stock at $84,630 "to satisfy his indebtedness to Total Safety" and stripped him of Class B stock worth approximately $500,000, all at the direction of its subsidiary, Total Safety. (Rec. Doc. No. 149 at 23-24, 149-2 at 2).

*Class B Stock Forfeiture*

The Class B units were granted to Rowland under a 2011 "Class B Incentive Unit Award Subscription Agreement" ("Unit Award Agreement") with W3 Holdings, LLC. (Rec. Doc. No. 117-2). Under the Unit Award Agreement, Rowland would "become vested" in his Incentive Units in accordance with the company's LLC Agreement. However, in the event of "any breach by Participant of the non-competition or non-solicitation provisions" of Rowland's employment agreement, "then all vested Incentive Units may, at the discretion of the Board of Managers, be forfeited without further consideration." (Rec. Doc. No. 117-2 at 5).

The units were restricted securities, and exempt from registration under the 1933 Securities Act pursuant to Regulation D's Rule 701 ("Exempt Offerings Pursuant to Compensatory Arrangements"). Sales or grants made under this exemption may be for either deferred compensation or incentive purposes.[4]

The Unit Award Agreement incorporates by reference a 26 U.S.C. § 83 Election ("Property transferred in connection with performance of services")(hereinafter "Election"). (Rec. Doc. No. 117-2 at 5). The Agreement required a Participant to include

---

[4] Rule 701: Exempt Offerings Pursuant to Compensatory Arrangements, *Executive Summary and Background*, available at: http://www.sec.gov/rules/final/33-7645.htm.

in his gross income the fair market value of the stock. (Rec. Doc. No. 117-2 at 5). The Election states that "[t]he undersigned taxpayer elects, pursuant to Code Section 83(b), to include in gross income in 2011 as compensation for services rendered the fair market value of property received in connection with his or her services in excess of the amount paid for the property..." (Rec. Doc. No. 117-2 at 11). The Election does not provide that the transferred property constitutes compensation for services. The Election provides that the transferred property is being included *within gross income*, as it is in connection with the performance of services.

This stock claim is based on a Louisiana Supreme Court case, *Morse v. J. Ray McDermott & Co., Inc.*, 344 So.2d 1353 (La. 1977). The plaintiff had earned an award through his employer's supplemental compensation plan, but had not received the entire award before he was fired. When the plaintiff was fired, the employer refused to waive the plan's non-termination requirement, which resulted in the forfeiture of "already-earned compensation." *Id*. at 1367. The *Morse* court ruled that the employer's failure to waive the plan's non-termination requirement constituted an abuse of a legal right. *Id*. at 1369. This ruling was based on the policy behind the Louisiana wage forfeiture law, and general notions of justice and fair play.

In *Cornet v. Cahn Electric Company, Inc.*, the Louisiana Supreme Court limited *Morse* to cases involving forfeiture of wages. 434 So.2d 1052 (La. 1983). In *Cornet*, the plaintiff was denied his interest in a retirement investment fund when he quit his job before he was eligible for retirement, even though a portion of his salary was paid into the fund. *Id*. The court distinguished *Morse* by concentrating on the fact that the forfeiture in *Morse* involved actual wages for services performed by the employee. *Id*. at 1056.

Therefore, a cause of action for abuse of rights exists to recover payments that are either delayed compensation or for performed services. *Hennings*, Jr. v. CDI Corp., 451 Fed.Appx. 359, 369 (5th Cir. 2011).[5] Payments that are subject to discretion and do not automatically accrue throughout the year for services performed, are not actionable, as they constitute "gratuitous bonuses" or "discretionary payouts." *Id*.

The Class B *Incentive* Unit Award Agreement, however, makes clear that the units were being granted for an incentive purpose and not for a compensation purpose. Additionally, the Participant, Rowland, acknowledged that the "Incentive Units," as they are referred to throughout the agreement, were being

---

[5] In *Hennings*, an employee argued that he "retired" in 2008, and sought a performance based bonus for the year 2007. 451 Fed.Appx. at 368. While retirement could entitle the employee to a bonus, resignation or termination would cause him to be ineligible. *Id*. The Fifth Circuit found that because the payments were discretionary, and not mandatory, they could not be recovered in a cause of action for abuse of rights.

acquired for "investment purposes only." (Rec. Doc. No. 117-2 at 2). Further, Rowland's salary, a base salary subject to a discretionary annual increase, was fixed under the Employment Agreement with Total Safety. (Rec. Doc. No. 1-2 at 3). Similarly, his benefits were detailed. (*Id*.).

The Court notes that this case is distinguishable from *Hennings* in the sense that, certain Incentive Units were not future payments or bonuses, but had already vested. However, even vested units were subject to discretion, and therefore not a mandatory payment to the Participant under the Unit Award Agreement. (Rec. Doc. No. 117-2 at 5). In *Cornet*, the employee already possessed an interest in the investment fund, yet the case established the *Morse* limitation. 434 So.2d 1052. Whether the discretion was exercised at the direction of Total Safety is irrelevant. The focus of the inquiry is the purpose of the stock plan, whether the plan substitutes salary or pay for performance, and whether payments are discretionary or mandatory. *Lloyd v. Georgia Gulf Corporation*, 961 F.2d 1190, 1193 (5th Cir. 1992); *Id*. at 1066.

The stated purpose of the stock grant at issue is in the title, to provide employees with incentives. Rowland was not required to participate in the plan. There is no evidence that Rowland's salary and/or employee benefits would have changed had

he decided not to take part in the stock plan. This is supported by the fact that Rowland's 2005 Employment Agreement pre-dates the Unit Award Agreement.[6] Rowland does not contend that unit awards substitute salary or pay for performance. Rowland neither gained nor lost any money when the stock was forfeited.[7] <u>The Court finds that this stock claim has no basis in the law, and grants the 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted</u>.

*Class A Stock Repurchase*

The Class B stock was issued pursuant to the terms of the Amended and Restated Limited Liability Company Agreement ("LLC Agreement") for W3 Holdings. (Rec. Doc. No. 128-1 at 2).

Section 8.09 (b) provides: "[t]he Company may elect to purchase all or any number of the Management Units of any Management member...by delivering written notice." (Rec. Doc. No. 143-3 at 10).

Section 8.09 (a) provides: "[i]f a Management Member ceases to be employed by or provide services to the Company and its Subsidiaries for any reason, all of the Management Units held by such Management Member...(other than any Class B Units which are forfeited), will be subject to purchase by the Company...at a purchase price equal to the Repurchase Fair Market Value of such Management Units." (*Id*.).

Section 8.09 (c) provides: "[t]he Company may pay for the Management Units to be purchased by it pursuant to the Purchase Option by...(ii) the cancellation of any indebtedness

---

[6] Rowland has never claimed the existence or provided a modified Employment Agreement, in light of the Unit Award Agreement.

[7] This is so despite the fact that Rowland cannot take a deduction with respect to the forfeited property.  *Cf. Cornet*, 434 So.2d at 1056.

owed by the Management Member to the Company or any Subsidiary thereof....(*Id.*).

A repurchase took place under the LLC Agreement at a Fair Market Value ("FMV") per Class A of $930, for an aggregate price of $84,630. Rowland contends the stock had a significant higher FMV, almost $500,000 and was wrongfully repurchased to satisfy "indebtedness." Although, this claim is also based on the *Morse* abuse of rights doctrine, the doctrine is not as well developed in this context.  However, simply because this factual scenario has yet to be addressed does not lead to a conclusion that it is not actionable.

For the abuse of rights doctrine to apply, "the holder of an individual right must exercise that right to the detriment of another simply for the sake of exercising it." *Brumley v. Leam Investments, Inc.*, No. 2012 WL 525474, at *19 (W.D. La. 2012). The cause of action, can apply when at least one of the four conditions is met: (1) predominant motive for exercise of the right is to harm; (2) there is no serious or legitimate motive for exercise of the right; (3) the exercise of the right violates moral rules, good faith, or elementary fairness; or (4) the exercise of the right is for a purpose other than for which it was granted." *Lee v. Pennington*, 830 So.2d at 1043; *Id*.

While the primary motive for the repurchase is unclear, Rowland believes the repurchase was to harm him. Payment for the

repurchase was completed by cancelling Rowland's debts to Total Safety. Those debts consist of litigation and investigation costs related to the instant litigation. (Rec. Doc. No. 128-1 at 2). Given that no judgment has been issued in this case, the unfairness of this is clear. However, Total Safety did not exercise the right of repurchase. Under Section 8.09 of the LLC Agreement, repurchase could only be exercised by the Company, W3 Holdings. The repurchase may very well have benefitted Total Safety to Rowland's detriment; however, Total Safety is not the party that exercised that right. Total Safety was not the holder of the repurchase right and therefore the abuse of rights doctrine cannot apply here. For this reason, the Court grants Total Safety's 12(b)(6) motion to dismiss the counterclaim for abuse of rights with respect to the stock repurchase.

### 2. Overbroad TRO

Rowland contends that Total Safety sought an overbroad TRO, thereby violating the right to sue and committing an abuse of rights. In this jurisdiction, a party may be entitled to damages for the abuse of the process of injunction. *Stewart v. Mix*, 30 La. Ann. 1036, 1039 (La. 1878); *Clipper Estates Master Homeowners' Ass'n, Inc. v. Harkins*, No. 2013 CA 0429, 2013 WL 5925762 (La. App. 1 Cir. 11/4/14). A cause of action for abuse of the civil process has been understood to fall under the

umbrella of the broader cause of action for abuse of rights. *Fidelity Bank and Trust Co. v. Hammons*, 540 So.2d 461, 465 (La. App. 1 Cir. 1989); *Weldon v. Republic Bank*, 414 So.2d 1361, 1364 n.1 (La. App. 2 Cir. 1982). It follows that, under Louisiana law, a cause of action for abuse of rights exists that would allow recovery for abuse of the injunction process.

Rowland claims that an overbroad TRO was sought to harm and, or, harass him. This meets at least one of the conditions for the abuse of rights doctrine to apply. However, as discussed above under (E), because Rowland has failed in pleading a claim for abuse of process, Rowland has also failed to allege a claim for an abuse of rights as alleged. <u>The counterclaim fails to plead a claim to relief for abuse of rights as a result of an abuse of the injunction process, and the Court grants the 12(b)(6) motion to dismiss this claim</u>.

Accordingly, and for the reasons enumerated above,

**IT IS ORDERED** that the Motion to Dismiss is **GRANTED** in part and **DENIED** in part. **IT IS ORDERED** that the following counterclaims are **DIMISSED** pursuant to Federal Rule of Civil Procedure 12(b)(6): intentional interference with contract; conversion; abuse of process; and abuse of rights. **IT IS ORDERED** that the motion to dismiss is **DENIED** as to the following

counterclaims: unfair trade practices; and wrongful issuance of a temporary restraining order.

II.  *Motion for Partial Summary Judgment under Rule 56*

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 749 (5th Cir. 2002).

A party may move for partial summary judgment as to one or more elements of a claim. *See* Federal Rule of Civil Procedure 56(a). The proponent of the motion bears the burden of showing a lack of evidence to support his opponent's case. Fed. R. Civ. P. 56(c); *Stauffer v. Gearhart*, 741 F.3d 574, 582 (5th Cir. 2014). If a motion for partial summary judgment is properly supported, the opposing party may not rely merely on allegations or denials in its own pleadings, but must, in its response, set out specific facts showing a genuine factual dispute for trial. *Stauffer*, 741 F.3d at 582. However, the court must draw all justifiable inferences in favor of the non-moving party. *TIG Ins. Co.*, 276 F.3d at 759. A court must refrain from making credibility determinations or weighing the evidence. *Celtic*

33

*Marine Corp. v. James C. Justice Companies, Inc.*, 760 F.3d 477, 481 (5th Cir. 2014).

A genuine dispute of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Royal v. CCC & R. Tres Arboles*, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013). A party cannot "defeat summary judgment with conclusory allegations, unsubstantial assertions, or 'only a scintilla of evidence.'" *Celtic Marine Corp., 760 F.3d at 481; TIG Ins. Co.*, 276 F.3d at 759.

If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact-including an item of damages or other relief- that is not genuinely in dispute and treating the fact as established in the case. Fed. R. Civ. P. 56(g).

Total Safety seeks partial summary judgment on the following claims: (A) breach of contract, (B) breach of fiduciary duty, (C) misappropriation of trade secrets under Louisiana law, (D) unfair competition under Louisiana law, and (E) computer fraud and abuse under federal law.

### A. Breach of Contract Claim

Total Safety seeks partial summary judgment to establish the validity and enforceability of the employment agreement and the non-compete clauses; and, to establish that Rowland breached the confidentiality, return-of-property, and non-competition provisions of the employment agreement.

#### *The Non-Compete Clauses and Louisiana Public Policy*

This Court sitting in diversity is generally required to apply the Louisiana approach to conflicts of law. *See Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941). However, Louisiana allows the parties to a contract to stipulate in their contract which state's laws are to govern them. *NHC Corp. v. Broyles*, 749 F.2d 247, 251 (5th Cir. 1985). Rowland's employment contract with Total Safety provides that the contract is to be governed by Texas law.[8] Such contractual stipulations are not honored, however where "there are legal or 'strong public policy considerations justifying the refusal to honor the contract as written." *Id*.

"Louisiana's strong public policy restricting noncompetition agreements between employers and employees is

---

[8] Rec. Doc. No. 1-2 at 9.:  *Choice of Law: All issues and questions concerning the <u>construction, validity, enforcement and interpretation of this agreement shall be governed by, and construed in accordance with, the laws of the state of Texas</u>, without giving effect to any choice of law or conflict of law rules or provisions (whether of the state of Texas or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the state of Texas.*

based on the underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently become a public burden." *Technical Industries, Inc. v. Banks*, 419 F.Supp. 2d 903, 910 (W.D. La. 2006). Because non-compete covenants are in derogation of the common right, they must be strictly construed against the party seeking their enforcement. *Id.* Non-compete agreements are deemed to be against public policy, except in the limited circumstances delineated by statute. *Id.*

Non-compete agreements are "null and void" under La. Rev. Stat. § 23:921, unless they fit certain limited and specifically described exceptions. Section 23:921 dictates that to be valid, such agreements must designate "a specified parish or parishes, or municipality, or parts thereof" where the agreement is to be effective, and those parishes and municipalities are further limited to those areas where the party seeking to enforce the non-compete agreement carries on a like business within the specified parish(es) or municipality(ies). The non-compete period cannot exceed "two years from the date of the last work performed under written contract." La. Rev. Stat. § 23:921(c).

Non-competition, non-solicitation, and non-recruitment covenants are subject to the foregoing requirements as all three constitute non-compete provisions. *Restivo v. Hanger Prosthetics*

*& Orthotics, Inc.,* 483 F.Supp. 2d 521, 532 (E.D. La. 2007). The employment agreement at issue specifies the 22 parishes and 5 municipalities in which all three covenants apply, and provides that the covenants apply if Total Safety "carries on a like business" in the designated areas. The Agreement's non-competition, non-solicitation, and non-recruitment periods were each 12 months following the end of Rowland's employment. The Court finds that the Agreement's non-competition, non-solicitation, and non-recruitment provisions do not contravene Louisiana law and public policy.

### Validity of the Employment Contract under Texas Law

The Court next addresses the validity and enforceability of the contract and the non-compete provisions under the applicable choice of law provision: Texas.[9]

**Validity of the Employment Contract**

A valid contract requires (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, (5) execution and delivery of the contract with the intent that it be mutual and binding, and (6) consideration.

---

[9] La. Rev. Stat. § 23:921(A)(2) provides that: "The provisions of every employment contract or agreement… by which any foreign or domestic employer…includes a choice of law clause in an employee's contract of employment or collective bargaining agreement…shall be null and void except where the…choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative active." Rowland does not contend that the agreement is illegal under this section, and although Rowland claims to have forgotten signing the agreement, Rowland does not claim that the agreement was signed unknowingly or involuntarily.

*Mack v. John L. Wortham & Son, L.P.*, 541 Fed.Appx 348, 362 (5th Cir. 2013). The essential terms must be defined with sufficient precision to enable the court to determine the obligations of the parties. *Id.* (*citing New Process Steel, L.P. v. Sharp Freight Sys.*, No. 01-04-00764, 2006 WL 947764, at *3 (Tex. Civ. App. Apr. 13, 2006)).

The employment contract with Total Safety was signed by Rowland and the company in 2005. Under the terms of the agreement, Rowland was to be paid a base salary, subject to an annual discretionary increase, as well as a performance bonus, and was to receive health and welfare benefits, all in consideration for his continued diligence and loyalty as an employee. (Rec. Doc. No. 1-2 at 2). Rowland does not contest consent or mutual assent, and nothing in the record suggests that these requirements are at issue. The terms of the ten (10) page agreement are clear and precise.

The Court next turns to whether an otherwise enforceable agreement exists, and begins by resolving whether Rowland was an at-will employee of Total Safety. The long standing rule in Texas provides for employment at will, terminable at any time by either party, with or without case, absent an express agreement to the contrary. *Federal Express Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993). Although Item 2 of the employment

agreement provides for an employment period of two years, with automatic one year period renewals, Rowland could be terminated without cause under Item 6.[10] Otherwise enforceable agreements can emanate from at-will employment; however, so long as the consideration for any promise forming such agreements is not illusory. *Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 644 (Tex. 1994). Consideration for a promise is illusory if is dependent on a period of continued employment.

In this case, the Court determines that the Employment Agreement contains non-illusory promises serving as consideration: Total Safety's promise to pay the base salary if it terminated Rowland for a reason other than cause as set out in the agreement is a non-illusory promise. *See Guy Carpenter & Co., Inc.*, 334 F.3d 459, 465 (5th Cir. 2003)(holding employer's promise to pay a designated severance if it terminated the employee without good cause was non-illusory); *see also Corporate Relocation, Inc. v. Martin*, No.3:06-CV-232-L, 2006 WL 4101944, at *12 (N.D. Tex. Sept. 12. 2006). The Court notes that Rowland does not contest the overall validity of the contract.[11] Rowland does contend that the 2005 employment agreement may no

---

[10] Rec. Doc. 1-2 at 4: " Notwithstanding Section 2 of this Agreement, the Employment Period shall end on the earlier of...(ii) termination by the Company with or without Cause."
[11] Rowland does contend that the 2005 Employment Agreement may have been superseded by a later employment agreement; however, does not provided much detail on this. Ultimately, this is a separate issue altogether that does not affect the findings here.  (Rec. Doc. No. 304 at 22).

longer be enforceable as it may have been superseded by later agreements.

The Court finds that the employment agreement constitutes a valid contract, and further, that the validity of the 2005 Employment Agreement is not a disputed issue in this matter. Although the Court finds that the Agreement may be enforceable, the Court declines to find that the 2005 Employment Agreement is enforceable as this is a genuine issue of material fact for trial.

**Enforceability of the Non-Compete Provisions**

Texas Business and Commercial Code Annotated § 15.05 provides that "[e]very contract, combination, or conspiracy in restraint of trade or commerce is unlawful." (Vernon 2002). Section 15:50(a) provides that "[n]otwithstanding Section 15.05...a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable...."

The Court next considers whether the covenant not to compete, containing the non-competition, non-solicitation and non-recruitment covenants, was "ancillary to or part of" an

otherwise enforceable agreement. First, as discussed, the enforceability of the 2005 Employment Agreement is a genuine issue of material fact. Second, Total Safety has failed to demonstrate that the noncompete covenants are ancillary to the 2005 Employment Agreement.

The Texas Supreme Court has stated that to be ancillary to or part of an otherwise enforceable contract, "(1) the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing; and (2) the covenant is designed to enforce the employee's consideration or return promise [the promise not to disclose the trade secrets]." *Guy Carpenter & Co., Inc*., 334 F.3d at 465. Total Safety did not explicitly promise in the employment agreement to provide Rowland with confidential or proprietary information, or trade secrets, in exchange for his promises not to compete. *Cf*. *Olander v. Compass Bank*, 363 F.3d 560, 564-65 (5th Cir. 2004); *Corporate Relocation, Inc. v. Martin*, 2006 WL 4101944, at *12. The non-illusory promise regarding Rowland's entitlement to a base salary if Total Safety terminated him for a reason other than cause does not give rise to an "interest worthy of protection" by the non-compete covenants. *Cf. Id.* at *13; Light*, 883 S.W.2d at 647.

The Court need not discuss whether the limitations are reasonable under Section 15:50(a). To the extent that the motion for partial summary judgment seeks to establish the enforceability of the noncompete provisions, the motion is denied. To the extent that the motion for partial summary judgment seeks to establish that the employment contract is a valid agreement; and that the noncompete provisions do not contravene Louisiana public policy, the Court makes factual findings in favor of Total Safety.

### Rowland's Breach of the Employment Agreement

The Court analyses Total Safety's breach of contract claim under Texas law. The essential elements of a breach-of-contract claim are (a) valid contract (the non-compete agreements) were formed between Total Safety and Rowland, (b) Total Safety performed its obligations under the contract, (c) Rowland breached his contract by engaging in a competing business within one year after employment terminated; and (d) Total Safety was damaged as a result. *See Strange v. HRsmart*, Inc., 400 S.W.3d 125, 129 (Tex. App. 2013); *West v. Triple B Servs., LLP*, 264 S.W. 3d 440, 446 (Tex. App. 14th Dist. 2008).

Total Safety specifically requests that the Court find (1) that Rowland improperly competed with Total Safety in the restricted territory; (2) that Rowland improperly solicited

42

Total Safety's customers for work within the restricted territory; (3) that Rowland improperly recruited Total Safety's employees to join competitor, 24HR Safety; and (4) that Rowland improperly stole and retained Total Safety's confidential information.

As discussed, Total Safety has not established that the non-compete provisions are enforceable under Texas law. This failure is fatal to Total Safety's ability to establish all four elements of a breach of contract claim. As it is unclear whether the noncompete provisions are enforceable under Texas law, the Court cannot find that Rowland breached the employment agreement by (1) improperly competing with Total Safety, (2) improperly soliciting Total Safety's customers, or (3) improperly recruiting Total Safety's employees.

Rowland acknowledges "improperly" downloading and taking with him Total Safety files on 7 flashdrives. (Rec. Doc. No. 304 at 1). Rowland also does not contest the confidentiality of the information. These are not genuine issues of fact for trial. However, under the employment agreement's provision for 'Confidential Information,' [12] misuse and/or disclosure of Total Safety's confidential information is required. Rowland maintains

---

[12] Rec. Doc. No. 1-2 Item 7: "The Employee agrees that he shall use the Confidential Information only as necessary and only in connection with the performance of his duties hereunder. Employee agrees that he shall not disclose to any unauthorized person or use for his own or any other purposes...any Confidential Information without the prior written consent..."

that the information was not disclosed or misused. Rowland further contends that: "[t]o date, 24HR Safety has produced over 75,000 pages of documents from the forensic imaging, and not one shred of paper demonstrates that Rowland ever provided any Total Safety documents to 24HR Safety. Thus, whether Rowland breached the employment agreement through misuse and/or disclosure of the downloaded confidential information is also a genuine issue of fact for trial. The Court finds that Rowland downloaded and took with him confidential information in leaving Total Safety's employment. However, the Court declines to partial summary judgment as to Rowland's liability for breach of the non-compete and confidentiality provisions of the 2005 Employment Agreement.

## B. Breach of Fiduciary Duty Claim Under Louisiana Law

Louisiana courts have confined fiduciary duties to special relationships of trust and confidence. *Ducote Jax Holdings, LLC v. Bradley*, No. 04-1943, 2007 WL 2008505, at *9 (E.D. La. 2007). In regard to the employee-employer relationship, an employee owes a duty to his employer to be loyal and faithful to the employer's interest in business. *Novelaire Technologies, LLC v. Harrison*, 994 So.2d 57, 64 (La. App. 5 Cir. 8/19/08). The fiduciary duty of an employee does not end when the employment is terminated. *Novelaire Technologies, LLC v. Harrison*, 994 So.2d at 64.

A cause of action for breach of fiduciary duty requires proof of fraud, breach of trust, or an action outside the limits of the fiduciary's authority. *Id.* In *Novelaire Technologies*, the court, on a request for a preliminary injunction, held that plaintiff made a prima facie showing that the defendant breached his fiduciary duty where plaintiff argued that defendant violated a promise not to disclose confidential information. *Id.* at 64.

Total Safety contends that Rowland breached his duty of loyalty to Total Safety by stealing Total Safety's confidential, proprietary information in order to compete against Total Safety for his and 24HR Safety's benefit- and by continuing to retain, access and disclose Total Safety's confidential information to 24HR Safety's owners.

Although Rowland does not directly respond to these contentions, Rowland does dispute disclosing confidential information to 24HR Safety. Therefore, there is a genuine issue of material fact as to whether Rowland was acting in contravention of his duty of loyalty. This claim for breach of fiduciary duty is best left to the jury. <u>The Court declines to enter partial summary judgment as to Rowland's liability on this claim.</u>

### C. Misappropriation of Trade Secrets Claim Under the *Louisiana Uniform Trade Secrets Act*

Total Safety claims Rowland "downloaded confidential, proprietary information to the flash drives, emailed them to personal email accounts, and even printed some."[13] Total Safety contends that the stolen files contained Total Safety's trade secrets.

To establish a violation under Louisiana Uniform Trade Secrets Act (LUTSA),(1) there must first be a determination that legally protected trade secret actually existed, (2) if so whether an express or implied contractual or confidential relationship existed between the parties obligating recipient of alleged secret material not to use or disclose it, and (3) finally the obligee must prove that the party receiving the secret information wrongfully breached its duty of trust or confidence by disclosing or using the information to the injury of the obligee. *See* La. Rev. Stat. Ann. §51:1431(2)(b)(ii)(bb); *Restivo v. Hanger Prosthetics & Orthotics*, 483 F.Supp. 2d 521, 533 (E.D. La. 2007).

Existence of a Legally Protected Trade Secret

Louisiana law defines a "trade secret" as "information, including a formula, patter, compilation, program, device,

---

[13] Rec. Doc. No. 281 at 39.

method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." La. Rev. Stat. § 51:1431.

Here, Total Safety contends that Rowland downloaded dozens of files, including the following files: billing information, pricing analysis information for specific customers, budget plans, and site inspection documents.[14] Total Safety contends that stolen information was proprietary and confidential information. The Employment Agreement provides that confidential information is that "concerning the business or affairs of the Company or any of its Subsidiaries or their customers."[15]

Rowland does not dispute downloading confidential information onto the flashdrives. However, Total Safety must still establish that any or all of the information constitutes trade secret. Total Safety generally pleads and avers that the information contains the "recipe for how we do business with a client," and that possession of the information by a competitor "gives them a very competitive advantage... know our rates and

---

[14] Rec. Doc. No. 281-1 at 24.
[15] *Id*. at 5.

our costs...”[16] Although Total Safety claims that the information is not available to the public, Total Safety has neither established nor identified which documents and information derive "independent economic value"[17] or that the information is "not readily ascertainable by proper means." Rowland's liability on this claim turns on whether the information is trade secret.

While Total Safety is given leeway at the pleading stage to plead generally, on a motion for partial summary judgment, Total Safety bears the burden of establishing that the nature of the subject documents is not a "genuine issue of fact." A reasonable jury could find that the downloaded information did not constitute trade secret under Louisiana law.

The Court finds that the existence of trade secret information among the downloaded documents is a genuine issue of fact in this case, and because Rowland's liability under the statute turns on the nature of the information contained therein, the Court declines to enter partial summary judgment as to Rowland's liability under the Louisiana Uniform Trade Secrets Act.

---

[16] Rec. Doc. No. 281 at 41.
[17] When Total Safety filed the SAC, Total Safety acknowledged its inability to "list all of the trade secrets that were misappropriated...however, Total Safety knows that he downloaded over 200 electronically stored files belonging to Total Safety…". Rec. Doc. No. 117 at 44.

### D. Unfair Competition Claim Under the *Louisiana Unfair Trade Practices and Consumer Protection Law*

Total Safety contends that Rowland's theft of the company's confidential and proprietary information in breach of his fiduciary duty constitutes deceptive and unethical conduct under LUTPA. Total Safety further contends that Rowland "recruited Total Safety's employees by fully orchestrating employment with 24HR Safety for Justin Rowland and Jackie Mixon. Rowland responds by stating that "[d]isputed issues of material fact preclude a finding of liability on Total Safety's LUTPA claim," however, provides no discussion of what those disputed issues are. (Rec. Doc. No. 304 at 13-14).

Rowland admits to downloading confidential information in leaving Total Safety's employment. (Rec. Doc. No. 304 at 1). However, Rowland contests disclosing or otherwise misusing the downloaded confidential information in breach of fiduciary duty.

In order to recover under LUTPA, a plaintiff must prove fraud, misrepresentation, or unethical conduct. *Computer Management Assistance Co. v. Robert F. DeCastro*, Inc., 220 F.3d 396, 404 (5th Cir. 2000). The range of prohibited practices under LUTPA is extremely narrow. *Cargill, Inc. v. Degesch America, Inc.*, 875 F.Supp. 2d 667, 675 (E.D. La. 2012). An example of such unethical practices would be the "solicitation

and diversion of an employer's customers prior to termination." *Restivo*, 483 F.Supp. 2d 521, 535 (E.D. La. 2007).

Although Rowland does not contest orchestrating employment with 24HR Safety, Total Safety has not established that the solicitation took place prior to Rowland leaving Total Safety. The solicitation of customers after the end of the employment relationship does not form the basis of a cause of action for unfair competition. *Restivo,* 483 F.Supp. at 535. <u>The Court finds that there are genuine issues of material fact involved in this claim, and declines to enter partial summary judgment as to Rowland's liability</u>.

### E. Computer Fraud and Abuse Claim Under *18 U.S.C. § 1030(a)(4)*

Total Safety seeks a partial summary judgment "to establish that Rowland accessed his Total Safety computer and exceeded his authorization by knowingly downloading Total Safety's valuable trade secrets and confidential, proprietary information so as to retain possession of this information once he resigned from Total Safety..." and further, that the information obtained is valued at more than $5,000. (Rec. Doc. No. 281-1 at 47).

The Computer Fraud and Abuse Act ("CFAA") prohibits certain intentional or knowing access to a computer without authorization. *See* 18 U.S.C. § 1030(a)(4)-(5); *Larson v.*

*Hyperion Intern. Technologies, LLC,* No. 12-50102, 494 Fed.Appx. 493, 497 (5th Cir. Oct. 19, 2012).[18] The statute provides a civil remedy for any person who suffers damage or loss resulting from such a violation. 18 U.S.C.A. § 1030(g); *Fiber Systems Intern., Inc. v. Roehrs*, 470 F.3d 1150, 1156 (5th Cir. 2006).

A plaintiff must prove the following elements: "(1) defendant has accessed a protected computer; (2) has done so without authorization or by exceeding such authorization as was granted; (3) has done so 'knowingly' and with 'intent to defraud'; and (4) as a result has 'further[ed] the intended fraud and obtain[ed] anything of value.'" *Associated Pump & Supply Co., LLC v. Dupre*, No. 14-9, 2014 WL 1330196, at *5 (E.D. La. April 3, 2014). A civil action can only be maintained under Section 1030(a)(4) of the CFAA if the violative conduct involves a Section 1030(a)(5)(B) factor, of relevance is, <u>(i) loss to 1 or more persons during any 1 year period aggregating at least $5,000 in value. 18 U.S.C. § 1030(a)(5)(B).</u>

Rowland contends that there are genuine issues of fact on elements (2), (3) and (4) that preclude partial summary judgment on this claim. Although Rowland does not discuss two of these points, Rowland does argue that it is unclear whether authorized

---

[18] "(a) Whoever- <u>(4) knowingly and with intent to defraud, access a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value....</u>" 18 U.S.C.A. § 1030(a)(4).

access was exceeded. In the criminal context under the statute, it has been held that computer user "has reason to know" that he or she is not authorized to access data or information when his actions are in furtherance of a criminally fraudulent scheme. *Associated Pump & Supply Co., LLC. v. Dupre*, 2014 WL 1330196 at *6 (*citing U.S. v. John*, 597 F.3d 263, 272 (5th Cir. 2010)). However, this specifically applies in the criminal context. The Fifth Circuit's discussion in *John* was taken to indicate approval that, in the civil context, under the terms of a broad confidentiality agreement, a former employees' actions may exceed authorized access within the meaning of 1030(a)(4). *Id.* at *6.

In *Dupre*, the Fifth Circuit was ruling on a 12(b)(6) motion. In denying the motion, the court stated "there was an Agreement and Dupre accessed and misused information in contravention of the Agreement- Plaintiff states a claim for civil liability under the CFAA." *Id.* at *6.

In the instant case there is a confidentiality agreement, and as previously discussed, a violation under the confidentiality provision consists of disclosure and/or use for a personal purpose or any other purpose without consent.[19]

---

[19] Rec. Doc. No. 1-2 Item 7: "The Employee agrees that he shall use the Confidential Information only as necessary and only in connection with the performance of his duties hereunder. Employee agrees that he shall not disclose

Rowland contends that the confidential information was not disclosed, which is a genuine issue of fact for trial. Rowland's use of the downloaded information is also a genuine issue of fact for trial. For these reasons, the Court declines to enter partial summary judgment as to Rowland's liability under the CFAA.

Accordingly,

**IT IS ORDERED** that Total Safety's Motion for Partial Summary Judgment under Rule 56 (Rec. Doc. No. 281) is **GRANTED** in part and **DENIED** in part. The Court finds that the 2005 Employment Agreement constitutes a valid contract. The Court declines to find that the agreement is enforceable, or that Rowland breached the agreement's restrictive covenants, as it is unclear whether they are enforceable under applicable law. However, the Court finds that the restrictive covenants contained in the 2005 Employment Agreement do not contravene Louisiana law and public policy. The Court does find that Rowland downloaded confidential information onto flashdrives in leaving his employment with Total Safety.

The Court finds that there are genuine issues of fact for trial on claims for breach of fiduciary duty, and claims under

---

to any unauthorized person or use for his own or any other purposes...any Confidential Information without the prior written consent..."

LUTSA, LUTPA, and the CFAA, and therefore declines to enter partial summary judgment as to Rowland's liability on these claims. Based on the foregoing, the Court further declines to enter a permanent injunction against Rowland.


New Orleans, Louisiana, this 17th day of November, 2014.


UNITED STATES DISTRICT JUDGE